DUBLIN TRANSPORTATION, INC., d.b.a. Airport Express,

v.

GOEBEL et al., Appellees;

Kaps, Appellant.

[Cite as *Dublin Transp., Inc. v. Goebel* (1999), 133 Ohio App.3d 272.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–611.

Decided March 23, 1999.

---

*Steven E. Hillman*, for appellee Christine F. Goebel.

*Moore, Yaklevich & Mauger* and *John A. Yaklevich*, for appellant.

---

PETREE, Judge.

This matter is before this court upon the appeal of third-party defendant-appellant, Charles G. Kaps, from a judgment of the Franklin County Court of Common Pleas in favor of third-party plaintiffs, Christine F. Goebel and Paradise Dance Club, Inc., in the amount of $102,500.

In 1995, Adnan Mouneimne requested that Kaps represent him in the acquisition of a transportation services business known as Airport Express Shuttle from Paradise Dance Club, Inc., a corporation owned and/or operated by Robert Goebel, Sr., his wife, Christine, and their son, Robert Goebel II. Kaps also assisted Mouneimne in incorporating Dublin Transportation, Inc., an Ohio general corporation created to function as the purchaser of Airport Express. Kaps was not paid for services rendered in the purchase transaction, but was issued five percent of the outstanding shares of stock in Dublin Transportation.

The acquisition was structured as a seller-financed asset purchase, the terms of which were set forth in an asset-purchase agreement dated October 5, 1995. Pursuant to this agreement, Dublin Transportation purchased all the physical assets, licenses, customer lists, and goodwill of the business for a total purchase price of $203,316. Dublin Transportation made a downpayment and executed a cognovit promissory note for the remaining balance of $165,000. In addition to the asset-purchase agreement, the parties executed a noncompetition agreement.

Kaps prepared all of the documents executed at the closing, including the promissory note. The first paragraph of the note identifies Dublin Transportation and Mouneimne, individually, as makers and indicates that the note is payable to the order of Paradise Dance Club, Inc., Robert Goebel, Christine Goebel, and Robert Goebel II. The note is signed by Mouneimne, both individually and as president of Dublin Transportation. Kaps's signature appears on the promissory note to the left of the line where Mouneimne signed in his corporate capacity; however, Kaps is not identified either as a witness or as a maker, obligor, or guarantor.

Approximately one year after it acquired the transportation services business, Dublin Transportation filed a complaint naming Christine Goebel, Robert J.

Goebel II, and Paradise Dance Club, Inc.,[1] as defendants.[2] The complaint alleged that the Goebels had breached both the asset-purchase agreement and the noncompetition agreement. The Goebels filed an answer and counterclaim, alleging that Dublin Transportation had defaulted on the promissory note. On the same day, Christine Goebel and Paradise Dance Club, Inc. filed a third-party complaint against Mouneimne and Kaps, asserting that each was individually liable on the note and demanding judgment on the unpaid balance. Following service of the third-party complaint, Kaps withdrew as counsel of record for Dublin Transportation and tendered back his shares of stock in that company. In his answer to the third-party complaint, Kaps denied liability on the note, asserting that he had not signed it in his individual capacity.

Pursuant to a covenant not to sue executed between Dublin Transportation, Mouneimne, and the Goebels in late May or early June 1997, the trial court, on July 1, 1997, ordered Dublin Transportation's original complaint against the Goebels and the third-party complaint against Mouneimne dismissed with prejudice. Also pursuant to the covenant not to sue, the trial court ordered that the third-party complaint against Kaps remain pending.

Thereafter, a jury trial on the merits of the third-party claim against Kaps was commenced on October 1, 1997 before a visiting judge of the Franklin County Court of Common Pleas.

Kaps represented himself at trial. During the trial, Kaps attempted to raise two defenses to liability: (1) that he did not sign the note as a maker or guarantor; and (2) that the Goebels were entitled to only one satisfaction of the promissory note: that by virtue of the covenant not to sue, the note was fully satisfied, and the satisfaction released Kaps from any liability on the note. The trial court indicated its intention to bifurcate the trial so that the sole issue to be determined by the jury was whether Kaps was obligated on the note; thereafter, if the jury rendered a verdict against Kaps, a subsequent hearing would be held to determine whether the verdict should be set off to the extent that the third-party plaintiffs received compensation either from Kaps or from the other makers of the note via the covenant not to sue. Kaps agreed to this bifurcation.

The jury ultimately returned a verdict finding Kaps liable on the note for $102,500. Thereafter, the parties stipulated that a hearing was to be held solely to ascertain what portion, if any, of the $102,500 judgment was subject to setoff. The hearing was subsequently set for March 26, 1998.

---

1. For ease of reading and wherever appropriate, Christine Goebel, Robert J. Goebel II, and Paradise Dance Club, Inc. will collectively be referred to as the Goebels.

2. Robert Goebel, Sr. died in February 1996. His estate was not named as a defendant in the complaint.

On December 24, 1997, John A. Yaklevich entered his appearance as counsel for Kaps.

The setoff hearing was held on March 26 and 27, 1998. At the conclusion of the hearing, the court orally entered judgment against Kaps in the full amount of the jury's verdict, $102,500, having found that he had presented no credible evidence entitling him to any setoff. The court's decision was journalized on May 4, 1998. Kaps has filed this timely appeal, asserting the following six assignments of error:

"1. The trial court erred in overruling appellant's trial motions to amend appellant's answer to conform to the evidence adduced at trial and to dismiss for failure to join indispensable parties under Ohio Rule Civ. P. 19."

"2. The trial court erred in overruling appellant's trial motion to dismiss for failure to state a claim upon which relief can be granted."

"3. The judgment was against the manifest weight of the evidence."

"4. The trial judge erred in his refusal to consider appellant's defenses to the third-party complaint."

"5. The trial court erred to appellant's prejudice where during opening statement the trial judge uttered improper, prejudicial remarks to appellant in the presence and hearing of the jury."

"6. The trial court erred in overruling appellant's motions for continuances."

■ In his first assignment of error, Kaps contends that the trial court erred in overruling his motions to amend his answer to the third-party complaint and to dismiss the third-party complaint. During the March 26, 1998 hearing, Kaps orally moved, pursuant to Civ.R. 15(B), to amend his answer to the third-party complaint to include the defense of failure to join a party needed for just adjudication. In addition, Kaps asserted that the third-party complaint was subject to dismissal under Civ.R. 12(B)(7) because the third-party plaintiffs had failed to join two of the four named payees on the note (Robert J. Goebel II and the estate of Robert J. Goebel ) as third-party plaintiffs and because no evidence established that the note had been assigned to Christine Goebel by either of these named payees. Accordingly, Kaps argued that lacking either joinder of the absent copayees or evidence of an assignment of their interests in the note, the third-party plaintiffs were not the holders of the note and had no legal right to enforce it. The trial court overruled Kaps's motions on the basis that they were untimely, not having been raised during the liability phase of the trial in October 1997.

Civ.R. 19(A) provides for the joinder of persons needed for just adjudication and states:

"(A) Persons to Be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H). If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. In the event that such joinder causes the relief sought to exceed the jurisdiction of the court, the court shall certify the proceedings in the action to the court of common pleas."

█ The promissory note was made payable to the order of Paradise Dance Club, Inc., Robert Goebel, Christine Goebel, and Robert Goebel II; thus, any obligation that might be owed by Kaps would be owed to all four parties jointly pursuant to the terms of the note. Accordingly, the parties must be considered to be joint obligees on the note. The rule generally applied by federal courts is that where two or more parties are joint obligees, they are indispensable parties in an action for enforcement of that obligation. *Bry–Man's, Inc. v. Stute* (C.A.5, 1963), 312 F.2d 585, 587; *Harrell & Sumner Contracting Co. v. Peabody Petersen* (C.A.5, 1977), 546 F.2d 1227, 1229; *Republic Realty Mtge. Corp. v. Eagson Corp.* (E.D.Pa.1975), 68 F.R.D. 218, 220.[3] The rationale behind this position is that the duty or promise was made to the obligees jointly, not separately; mandatory joinder of joint obligees is therefore justified to avoid inconsistent judgments, prevent multiple lawsuits, and to obtain final and complete relief between all interested parties. *Bry–Man's, supra.*

The trial court made no determination whether the Goebels and Paradise Dance Club, Inc. were joint obligees on the note or whether any such joint obligation rendered the estate of Robert Goebel and Robert Goebel II parties needed for a just adjudication in an action for enforcement of that obligation. Rather, the trial court denied Kaps's motions on the sole basis that they were untimely, not having been asserted during the liability phase of the trial on October 1, 1997. Kaps argues that Civ.R. 15(B) permits a motion to amend to be

---

3. Because Civ.R. 19(A) is patterned after Fed.R.Civ.P. 19 (see Staff Note to Civ.R. 19), an analysis of cases interpreting Fed.R.Civ.P. 19 is appropriate.

made "at any time, even after judgment," and that under Civ.R. 12(H)(2) both a Civ.R. 19 defense and a Civ.R. 12(B)(7) motion to dismiss may be raised at the trial on the merits and are not waived by failure to assert them in a pleading or motion.

While Kaps is correct in his assertion that under Civ.R. 12(H)(2), a party may raise the defense of failure to join a party needed for just adjucation at the trial on the merits, federal courts have denied timely objections when the movant's failure to assert the defense at an earlier time appears to have been unjustified. In *Benger Laboratories Ltd. v. R.K. Laros Co.* (D.C.Pa.1959), 24 F.R.D. 450, 452, the court held that "dismissal is not automatic under the Federal Rules upon a showing that an indispensable party has not been joined. * * * F.R.Civ.P. [R]ule 12(h) cannot be interpreted to mean that a party with the necessary information to make a motion for joinder of an indispensable party at his disposal can sit back and raise it at any point in the proceedings, when the only effect of the motion under the circumstances would be to protect himself and not the person alleged to be indispensable. Such an interpretation would violate the direction of F.R.Civ.P. [R]ule 1 that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.' "

Applying the foregoing rationale to the circumstances of the instant case, we find that the trial court did not err in denying Kaps's motions. Kaps, the person who drafted the promissory note, clearly knew who the payees on the note were at the time he filed his original answer to the third-party complaint and throughout the liability phase of the trial in October 1997, yet he waited until after the liability portion of the trial had been completed and the jury had already determined that the note was enforceable to move for joinder. The only effect of Kaps's motion for joinder would be to protect himself and not those persons alleged to be necessary for just adjudication. Accordingly, because Kaps had the necessary information to move for joinder as early as December 1996 (the date he filed his original answer to the third-party complaint), we find that his failure to move for joinder until the second phase of the trial in March 1998 was unjustified. Accordingly, Kaps's first assignment of error is overruled.

■ By his second assignment of error, Kaps asserts that the trial court erred in overruling his Civ.R. 12(B)(6) motion to dismiss. At the March 26, 1998 hearing, Kaps orally moved, pursuant to Civ.R. 12(B)(6), to dismiss the third-party complaint on grounds that the complaint failed to state a claim upon which relief could be granted. In support of his motion, Kaps cited R.C. 1303.08(D), which provides:

"(D) If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or

more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."

At the hearing, Kaps argued that R.C. 1303.08(D) prohibited the action against him by fewer than all of the payees on the note; accordingly, because only two of the payees were named as plaintiffs in the third-party action, the complaint failed to state a claim upon which relief could be granted and should, therefore, be dismissed.

As it did with Kaps's Civ.R. 12(B)(7) motion to dismiss, the trial court overruled the Civ.R. 12(B)(6) motion on the basis that it was untimely, not having been asserted at the liability phase of the trial in October 1997.

■ A motion to dismiss for failure to state a claim under Civ.R. 12(B)(6) is not waived by failure to raise it in a Civ.R. 12 pretrial motion. On the contrary, the motion may be made in any pleading permitted or ordered under Civ.R. 7(A), by motion for judgment on the pleadings, or as here, at the trial on the merits. See Civ.R. 12(H)(2). However, as we discussed in our disposition of the first assignment of error, in light of the fact that Kaps had the necessary information to assert this particular Civ.R. 12(B)(6) defense at the time he filed his answer to the third-party complaint or at the liability portion of the trial in October 1997, we find that the trial court did not err in overruling the motion. Accordingly, the second assignment of error is overruled.

■ By his third assignment of error, Kaps contends that the trial court's judgment is against the manifest weight of the evidence. If the trial court's judgment is supported by some competent, credible evidence going to all essential elements of the case, it will not be reversed on appeal as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

Kaps does not contend that the jury's verdict finding him liable as a maker or guarantor on the promissory note was against the weight of the evidence. Rather, Kaps contends only that the trial court erred in failing to find that the third-party plaintiffs' execution of the covenant not to sue and the corresponding dismissal of the action against Dublin Transportation and Mouneimne on the promissory note did not operate as a full satisfaction of any obligation Kaps owed on the note.

The covenant not to sue provides, in its entirety:

"Whereas on September 26, 1996 Dublin Transportation, Inc., d/b/a Airport Express, filed a lawsuit for damages and to enforce its position regarding a noncompetition provision which was part of the purchase by Dublin Transportation, Inc. of a shuttle service from Paradise Dance Club, Inc. On November 1,

1996, the Third–Party Plaintiffs, Christine F. Goebel and the Paradise Dance Club, Inc. filed a Third-Party Complaint for default on a cognovit note dated October 5, 1995.

"Whereas discovery in this case has shown conclusively that the Dublin Transportation, Inc. and Paradise Dance Club, Inc., Robert Goebel II, and Christine Goebel would be required to make significant monetary expenditures to bring this case to trial and that it would be in the best interests of the parties to enter into this Covenant Not to Sue (see attached exhibit A). The parties hereto agree as follows:

"1. The undersigned hereby jointly and severally promise, covenant, and agree that they will not commence, prosecute, continue or maintain any suit or action in any court in the United States or in any state thereof, or elsewhere, against any of the undersigned arising out of the purchase by Dublin Transportation, Inc. from the Paradise Dance Club, Inc.

"2. The undersigned jointly and severally promise that they will not commence, prosecute, continue or maintain any suit or action in any court in the United States or in any state thereof, or elsewhere, against any of the undersigned arising out of the *PURCHASE CONTRACT OR NONCOMPETITION AGREEMENT* dated October 5, 1995, which is attached hereto as exhibit 1.

"3. Dublin Transportation, Inc. will forthwith withdraw the Motion for Temporary Restraining Order filed on May 28, 1997 and the Motion for Issuance of Show Cause Order in Contempt filed on May 21, 1997 and dismiss with prejudice its complaint in case No. 96CVH09–7285 currently pending in the Franklin County Common Pleas Court against Christine F. Goebel, Robert J. Goebel II and the Paradise Dance Club, Inc.

"4. Paradise Dance Club, Inc. and Christine F. Goebel will forthwith dismiss with prejudice their third-party complaint in case No. 96CVH09–7285 currently pending in the Franklin County Common Pleas Court against Dublin Transportation, Inc. and Adnan Mouneimne.

"5. Nothing in this covenant not to sue shall be construed to apply to Charles G. Kaps and he is specifically being excluded from this covenant not to sue since it is the intention of Paradise Dance Club, Inc. and Christine F. Goebel to maintain an action against Charles G. Kaps as a comaker or guarantor or in any other capacity that he signed the cognovit note attached hereto as exhibit 2 and for any obligations he may have regarding the purchase of the airport shuttle business by Dublin Transportation, Inc. from Paradise Dance Club, Inc.

"In consideration of the above the undersigned, Dublin Transportation, Inc., Adnan Mouneimne, Paradise Dance Club, Inc., Christine F. Goebel, and Robert J. Goebel II authorize the various actions pending in the Franklin County

Common Pleas Court being Case No. 96CVH09–7285 between these specific parties to be dismissed, costs paid. The actions pending against Charles G. Kaps will remain as pending viable actions and he is not intended by any party hereto to be affected in any way whatsoever by this covenant not to sue. The parties also shall reserve the right to enter into Mutual Release agreements at the termination and conclusion of Case No. 96CVH09–7285."

On July 1, 1997, the trial court, acknowledging the covenant not to sue, ordered the complaint filed by Dublin Transportation against the Goebels and the third-party complaint filed by the third-party plaintiffs against Mouneimne dismissed with prejudice. In addition, pursuant to the covenant not to sue, the court ordered that the third-party action against Kaps remain as a viable action.

For the reasons that follow, we find that the covenant not to sue and the court's corresponding dismissal with prejudice of the Goebels' claim against Dublin Transportation and Mouneimne on the note did not amount to a full satisfaction of Kaps's obligation owed on the note.

"A covenant not to sue is nothing more or less than a contract and should be so construed." *Diamond v. Davis Bakery, Inc.* (1966), 8 Ohio St.2d 38, 42, 37 O.O.2d 383, 385, 222 N.E.2d 430. In *Diamond,* the plaintiff sustained injury to his teeth when he bit into a piece of salami manufactured and packaged by Warsaw Sausage Company and sold to the plaintiff by Davis Bakery. The plaintiff sued both the bakery and the sausage company. Prior to trial, the sausage company offered the plaintiff $650 in return for the plaintiff's covenant not to sue. The plaintiff accepted the offer, and covenanted that he would "cease and desist" from suing the company for any claim for personal injuries arising out of his injury. The covenant expressly stated that the plaintiff's acceptance of the $650 was solely in consideration of the granting of the covenant and did not constitute full compensation for the injuries sustained; rather, the $650 represented only partial payment for his injuries. The covenant also contained the plaintiff's express reservation of the right to continue the litigation against the bakery.

The plaintiff dismissed the sausage company from the action and proceeded solely against the bakery. The bakery pleaded the covenant not to sue as a defense and moved for judgment on the pleadings. The Ohio Supreme Court found that the covenant not to sue did not bar the action pending against the bakery. In so holding, the court noted that the written expression of the parties disclosed several factors: (1) the covenant was for the exclusive benefit of the plaintiff and the sausage company, (2) the covenant clearly stated that the consideration paid was only a partial consideration for the injury sustained, (3) the covenant clearly stated that the plaintiff was not "releasing" the company from any claim, but promised only to "cease and desist" from prosecution of its

action against the company, and (4) the covenant expressly reserved all rights the plaintiff had against the bakery.

Although the *Diamond* case involved a tort action and the instant case involves an action on a promissory note, we find the rationale set forth in *Diamond* applicable to the case before us. In the instant case, the covenant not to sue was for the exclusive benefit of Dublin Transportation, Mouneimne, and the third-party plaintiffs and, according to its express terms, was executed solely to avoid continuing legal expenses. In addition, Mouneimne's affidavit, attached to the covenant, clearly sets forth that no assets were available for recovery by the third-party plaintiffs should they have been successful in their action against Dublin Transportation and Mouneimne. Moreover, pursuant to the covenant, the parties did not release each other from their respective claims; rather, they promised that they would not commence or continue any action arising out of either the purchase agreement or the noncompetition agreement executed on October 5, 1995. The covenant does not state that the third-party plaintiffs' promise not to commence or continue any action arising out of the promissory note operated as a release and full satisfaction of the obligation owed on the note. In addition, the covenant expressly reserved all rights the third-party plaintiffs had against Kaps. While it would have been better for the third-party plaintiffs to have clearly stated in the covenant that the promise not to sue amounted only to a partial satisfaction of the debt, we construe the overall language of the agreement to imply exactly that.

Thus, we find that the trial court did not err in finding that the covenant not to sue did not amount to a full satisfaction of the obligation owed by Kaps on the note. Accordingly, the third assignment of error is overruled.

By the fourth assignment of error, Kaps contends that the trial court erred in refusing to consider Kaps's defenses to liability.

As we have previously noted, upon agreement of the court and the parties, the trial was bifurcated so that the jury determined only whether Kaps signed the note as a maker or guarantor, and the court determined whether the jury's verdict should be set off to the extent that Kaps either gave the third-party plaintiffs something of value that might qualify as a setoff or the third-party plaintiffs received something of value from the other makers of the note via the covenant not to sue. Upon thorough examination of the transcripts of both the liability and setoff phases of the trial, we disagree with Kaps's contention that the trial court failed to consider Kaps's defenses to liability. Kaps was permitted to introduce evidence in support of both his failure-of-consideration and satisfaction-of-the-note defenses. Accordingly, the fourth assignment of error is overruled.

By the fifth assignment of error, Kaps contends that the trial court, during his opening statement, made improper and prejudicial remarks in the hearing of the jury.

During his opening statement to the jury, Kaps indicated that the trial court had determined, in proceedings before trial, that the third-party plaintiffs were in violation of the noncompetition agreement and that the violation excused payment on the note. At a sidebar conference, counsel for the third-party plaintiffs objected to this statement, arguing that Kaps had mischaracterized the trial court's finding. The court admonished Kaps not to make misstatements to the jury and forbade further discussion of the issue in Kaps's opening statement until the court could familiarize itself with the court's previous rulings. Upon Kaps's suggestion that the court not speak so loudly in the presence of the jury, the court responded "Well, I didn't realize that. Perhaps I was. I didn't know I was." Thereafter, upon conclusion of Kaps's opening statement, the trial court requested a sidebar conference, at which the court warned Kaps not to violate the court's orders on penalty of a contempt finding. Kaps responded by requesting that the court repeat the admonition "out of the presence of the jury."

In determining whether a trial judge's remarks were prejudicial, a reviewing court must adhere to the following rules: (1) the burden of proof is placed upon the complaining party to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, and (4) consideration is to be given to their possible effect upon the jury and the possible impairment of the effectiveness of counsel. *State v. Wade* (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 365–366, 373 N.E.2d 1244, 1248–1249.

Reversible error must affirmatively appear on the record. The remarks that Kaps claims constitute reversible error were made to Kaps at sidebar conferences. The record contains no indication that the jury heard any of the discussions that took place before the bench. Furthermore, Kaps has failed to demonstrate that the court's remarks impinged on his credibility or the weight to be given the evidence that he offered. Accordingly, the fifth assignment of error is overruled.

By the sixth assignment of error, Kaps contends that the trial court erred in overruling his motions for continuances. A decision to grant or deny a motion for continuance is left to the sound discretion of the trial court. *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 9, 615 N.E.2d 617, 622–623. An abuse of discretion connotes more than an error of law; it implies that the court's attitude

is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

Kaps's first motion for continuance was made orally immediately before the jury phase of the trial. Kaps argued that because neither he nor the third-party plaintiffs had requested a jury trial on the third-party complaint, he was not prepared to go forward before a jury, and moved for a bench trial or a continuance to prepare for a jury. The trial court denied Kaps's motion on grounds that the jury demand asserted in the original complaint filed by Dublin Transportation continued uninterrupted throughout the proceedings relating to the third-party complaint.

As noted previously, Dublin Transportation filed a complaint, with a jury demand endorsed thereon, against the Goebels for breach of the purchase agreement and the noncompetition agreement. The Goebels answered, essentially denying the allegations of the complaint, and filed a counterclaim asserting that Dublin Transportation had defaulted on the cognovit note. The Goebels' answer and counterclaim did not contain a jury demand. The third-party plaintiffs then filed a third-party complaint naming Mouneimne and Kaps as the third-parties and contending that they were individually liable on the note. The third-party complaint did not contain a jury demand. On July 1, 1997, the trial court signed an entry reflecting that the claims asserted in the original complaint, the claims asserted in the counterclaim, and the claims asserted against Mouneimne in the third-party complaint were all dismissed with prejudice. The court's entry also stated that the action would continue as to the third-party complaint against Kaps.

It is contemplated by Civ.R. 38 that notwithstanding that the right to trial by jury exists, the right is waived unless proper demand is made therefor. The rule further provides:

"(B) Demand. Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue. Such demand shall be in writing and may be indorsed upon a pleading of the party. If the demand is indorsed upon a pleading the caption of the pleading shall state 'jury deemand endorsed hereon.' * * *

"(C) Specification of issues. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable.* * *

"(D) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(D) constitutes a waiver by him of trial by jury.

A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

Civ.R. 39 then provides:

"(A) By jury. When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury * * *.

"(B) By the court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."

■ Pursuant to Civ.R. 39, once a jury demand has been made, the trial of all issues covered by that demand shall be by jury unless the parties or their attorneys, by written stipulation or by oral stipulation, consent to trial by the court or the court, upon motion or of its own initiative, finds that the right of trial by jury of some or all of those issues does not exist. It is clear that the third-party plaintiffs and the court relied on the jury demand contained in the original complaint filed by Dublin Transportation. That complaint, asserted against the Goebels, raised two basic issues—breach of the purchase agreement and breach of the noncompetition agreement. The Goebels' counterclaim asserted that Dublin Transportation had defaulted on the promissory note. The third-party complaint alleged that Kaps was also liable on the promissory note. Both the original complaint and the counterclaim were subsequently dismissed. The allegation asserted in the third-party complaint created a new and different issue in the case, that is, whether Kaps signed the note as a maker or guarantor. Being a new and different issue, this allegation and any proof thereof were not covered by the jury demand contained in the original complaint.

■ Although we have determined that a jury demand was not properly made as to the third-party complaint, we conclude that the trial court did not err in causing the trial to go forward before a jury. As noted previously, Civ.R. 39(B) provides that "the court in its discretion upon motion may order a trial by a jury of any or all issues."

After Kaps orally moved that the matter be tried to the court, counsel for the third-party plaintiffs argued that the case should be tried to a jury, thereby invoking the court's discretion, under Civ.R. 39(B), to order a jury trial as to the issues raised in the third-party complaint. Under the circumstances of this case,

we cannot say that the trial court abused its discretion in ordering the case tried before a jury.

As to Kaps's assertion that he was entitled to a continuance to prepare for a jury trial, we note that when considering the propriety of a motion for continuance, the trial court may balance the potential prejudice to a party against the court's right to control its dockets and the public's interest in the efficient dispatch of justice. Kaps has not apprised this court of any prejudice suffered by the trial court's decision to go forward with the trial before a jury. Accordingly, the trial court did not abuse its discretion in overruling Kaps's motion for a bench trial or a continuance.

Kaps's second motion for continuance was filed approximately two weeks prior to the setoff hearing scheduled for March 26, 1998. In his motion, Kaps requested a thirty- to forty-day continuance so that counsel, who had not represented Kaps at the October 1, 1997 trial, could obtain a copy of the transcript in order to identify the parameters of the setoff hearing and to determine whether certain facts remained in issue or had been adjudicated during the trial. In an affidavit attached to the motion, Kaps's counsel averred that he requested the transcript on March 2, 1998, but was informed by the court reporter that the transcript would not be available until the end of the first week in April.

A hearing was held on the motion on March 23, 1998, at which time Kaps also raised as grounds in support of the motion the fact that Robert Goebel II, who had been subpoenaed to appear on March 26, 1998, was unable to attend on that date.

The court orally denied the motion, stating that the setoff issue to be determined at the March 26, 1998 hearing did not require reference to the trial transcript. The court also noted that Kaps represented himself at trial and thus was familiar with what occurred during that proceeding. Finally, the court stated that if counsel found anything shocking or surprising in the transcript when it was received, the court might reconsider the motion at that time. The court also determined that the hearing could commence without the presence of Robert Goebel II, since he could be called later by deposition if Kaps determined that he was, in fact, a crucial witness.

As previously noted, the decision whether to grant a continuance is left to the sound discretion of the trial court. The reasons cited by the trial court in refusing to continue the hearing, coupled with the trial court's willingness to reconsider the motion if circumstances warranted it, clearly demonstrate that the court's attitude was not unreasonable, arbitrary, or unconscionable. Accordingly, the sixth assignment of error is overruled.

Having overruled each of Kaps's six assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DESHLER and BROWN, JJ., concur.