THE STATE OF OHIO, APPELLEE, *v.* WADE, APPELLANT.

[Cite as State v. Wade (1978), 53 Ohio St. 2d 182.]

(No. 77-716—Decided March 22, 1978.)

*Mr. J. Walter Dragelevich,* prosecuting attorney, and *Mr. Dennis Watkins,* for appellee.

Messrs. *Phillips & Marks* and *Mr. Ronald A. Marks,* for appellant.

LOCHER, J.

I.

Appellant has presented eight propositions of law to support various claims of error in the trial court proceedings. In his first proposition, he alleges a denial of a fair and impartial jury because of being denied the right to examine prospective jurors as to their views on capital punishment. In *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 79,

a similar contention, "that by restricting *voir dire* examination on the question of capital punishment, the court prevented a venireman's possible partiality to emerge and be met by challenges for cause or peremptory challenges," was considered and rejected by this court.

Appellant's attempt to apply the decision of the United States Supreme Court in *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, to the instant cause is indeed strained. In *Witherspoon, supra,* the court was confronted with a situation where state law required the systematic exclusion of jurors possessing general conscientious scruples against capital punishment from a jury which returned a guilty verdict and sentenced the defendant to death. There, thus, exist two relevant distinctions between *Witherspoon, supra,* and the instant cause. The jury in the cause *sub judice,* in accordance with the Ohio statutory scheme, determined only the issue of guilt and did not prescribe the death penalty. Additionally important is the fact that the jurors in this case and in *State* v. *Lane, supra,* contrary to those in *Witherspoon, supra,* were neither included nor excluded because of their beliefs on the subject of capital punishment.

Moreover, not a scintilla of evidence is presented to this court demonstrating that prohibiting an inquiry into the jurors' beliefs precluded a fair and impartial determination. Indeed, *State* v. *Lane, supra,* represents that instructions concerning the limited jury function may be an adequate substitute for an injuiry into whether a juror could render an impartial decision in spite of his views on capital punishment. The record of this case is replete with statements informing the jurors that their function is the determination of guilt and not the imposition of the penalty. In *Witherspoon, supra,* it is significant to note that the Supreme Court of the United States could not conclude, on the basis of the record and data before it, "that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." *Witherspoon,* at page 518. Thus, in this case, where the jurors are neith-

er included nor excluded because of their beliefs on capital punishment and are adequately informed that they are to determine only the issue of guilt and not impose sentence, we are constrained to find the existence of a representative jury on the issue of guilt and no substantial increase in the risk of conviction and thereby reject appellant's antithetical assertion.

Additionally, appellant's request for a commutation of his sentence of death to life imprisonment because of this alleged error is *non sequitur*. Imposition of the sentence lies solely with the judge, not the jury, and this proposition has failed to advance any claims of error relating to the sentencing procedures.

Accordingly, we find appellant's first proposition of law to be without merit.

## II.

Appellant next asserts a denial of his rights to a fair and impartial jury, due process and equal protection of the laws, because the prospective jurors were asked their views on capital punishment by a questionnaire prior to their selection as prospective jurors and the appellant was not allowed to inquire into their opinions on capital punishment.

We concur with appellant that the question, "Opposed to capital punishment————," was improper. However, we are restrained from agreeing with appellant that he was denied a fair and impartial jury because the questionnaire was sent to prospective jurors, and, from those served, a panel of veniremen was chosen for his trial. First, appellant has failed to present evidence demonstrative of any resultant prejudice. Secondly, as noted by the Court of Appeals, appellant did not challenge the array on the basis of the questionnaire at the proper time, *i. e.*, the trial. The time for challenging the array is clearly specified in Crim. R. 24(E):

"* * * A challenge to the array shall be made before the examination of jurors pursuant to subdivision (A) and shall be tried by the court."

Having failed to timely raise this challenge to the ar-

ray and not presenting the challenge to the trial court, appellant may not attempt to take advantage of it for the first time on review. Appellant's second proposition of law, therefore, is overruled.

### III.

In *Griffin* v. *California* (1965), 380 U. S. 609, the United States Supreme Court held the Fifth Amendment privilege against self-incrimination applicable to the states by virtue of the Fourteenth Amendment to the United States Constitution. Appellant, in the instant cause, proposes that the constitutional guarantee against self-incrimination established in *Griffin* v. *California, supra,* was violated by certain prosecution comments, *i. e.,* "uncontradicted evidence," "two-way street" and "anybody's testimony," allegedly referring to appellant's failure to testify.

From an examination of the record, it appears that appellant is foreclosed from asserting this proposition with regard to all but one of the comments, because of his failure to timely object to the prosecutor's alleged improper remarks. The third paragrah of the syllabus in *State* v. *DeNicola* (1955), 163 Ohio St. 140, reads, in relevant part:

"Improper remarks of counsel during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to * * *; otherwise error cannot be predicated upon the remarks alleged to have been improper."

Nor, upon consideration of the entire record and the context of the prosecutor's comments, do we find any inflammatory statements or conduct prejudicial to the rights of appellant. This finding is consistent with our previous holding in *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, 65, that statements made by the prosecutor to the effect that the evidence against the appellant was uncontradicted and unrefuted did not constitute a comment by the prosecutor upon the defendant's failure to testify.

Appellant's third proposition of law is, therefore, rejected.

### IV.

In his fourth proposition of law, appellant asserts a claim of misconduct by the trial judge, predicated upon

specific statements directed to appellant's counsel and the alleged failure of the trial judge in two instances to give his complete and undivided attention to the trial. This court can discern no useful purpose in setting forth all seven of the challenged verbal exchanges. The following segment is illustrative:

"By Mr. Breckenridge: Now if it please the Court, we have been very patient—

"By the Court: You haven't been very patient at all—

"By Mr. Breckenridge:—leading the witness.

"By the Court: Let's not have any comment.

"By Mr. Breckenridge: Objection on leading the witness Your Honor, if it please the Court.

"By the Court: All right. It's overruled. Go ahead."

The alleged instances of failure to give undivided attention refer to two conferences that occurred between the judge and his bailiff during the proceedings and while appellant's counsel was speaking. Only one of these conferences was in the presence of the jury.

The trial judge is charged by statute in Ohio with the duty of controlling the criminal trial:

"The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue." R. C. 2945.03.

In the exercise of this duty, the judge must be cognizant of the effect of his comments upon the jury, recognized heretofore in *State* v. *Thomas* (1973), 36 Ohio St. 2d 68, 71, wherein this court commented:

"It must be noted that no absolute prohibition exists to preclude comment by a court during trial. It must also, however, be borne in mind that '* * * the influence of the trial judge on the jury is necessarily and properly of great weight * * *.' *Starr* v. *United States* (1894), 153 U. S. 614, 626."

The court quoted from the opinion in *Bursten* v. *United States* (C. A. 5, 1968), 395 F. 2d 976, 983, the following:

" 'It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter * * *.' "

The appellant was herein endowed with the constitutional rights to a fair trial and representation by counsel. Certain improper remarks by the trial judge, however, might have prejudiced these rights. Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel. See, generally, Annotation, 62 A. L. R. 2d 166 (1958).

Turning, however, to consideration of these specifically challenged comments, it is apparent from the record that appellant failed to object to the content of the judicial statements as being prejudicial to appellant's rights. The failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, for, absent an objection, the trial judge is denied an opportunity to give corrective instructions as to the error. *State* v. *Williams* (1974), 39 Ohio St. 2d 20; *State* v. *Childs* (1968), 14 Ohio St. 2d 56; *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107. See, also, *United States* v. *Gaines* (C. A. 3, 1971), 450 F. 2d 186, certiorari denied, 405 U. S. 927; *United States* v. *Bessesen* (C. A. 8, 1970), 433 F. 2d 861, certiorari denied, 401 U. S. 1009.

Objections were raised to the conferences between the judge and his bailiff during the proceedings, thus preserving these alleged errors for review. However, appellant has failed to demonstrate any possibility of prejudice resulting from these two occasions. The latter conference occurred outside the presence of the jury, and, upon objection, the trial judge replied: "I won't do it any more."

Certainly, this interference and the following vocal exchange cannot be asserted by appellant's counsel as an example that he trimmed his sails to the judicial wind that prevailed in the court room during the trial. *Cf. United States* v. *Ah Kee Eng* (C. A. 2, 1957), 241 F. 2d 157.

Although the challenged statements of the trial judge, while being misplaced attempts at good-natured humor, and the distraction created by the two conferences were unnecessary, considering all the circumstances, we do not find that these incidents could have been misunderstood by a jury of reasonable citizens to prejudice appellant's right to a fair trial and, or, that the effectiveness of his counsel could have been impaired. Therefore, finding no prejudice to the appellant, his fourth proposition of law is overruled.

## V.

Appellant, in his fifth proposition of law, asserts the unconstitutionality of the Ohio statutory scheme authorizing the imposition of capital punishment. This issue was decided in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73; *State* v. *Woods* (1976), 48 Ohio St. 2d 127; *State* v. *Bell* (1976), 48 Ohio St. 2d 270; *State* v. *Black* (1976), 48 Ohio St. 2d 262, and need not be reconsidered herein.

## VI.

In proposition of law No. 6, appellant argues that the search of the automobile after he had been arrested and handcuffed was unlawful, and all such evidence seized must be excluded. In his seventh proposition, appellant further advances that, where the police do not have probable cause to arrest, any evidence and confession thereafter obtained must be excluded at trial. These two propositions will be considered together.

Crim. R. 12(C) requires that motions to suppress evidence on the ground that it was illegally obtained (Crim. R. 12[B][3]) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier.

The effect of a failure to comply with Crim. R. 12(C) is stipulated in Crim. R. 12(G), as follows:

190

"Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (C) * * * shall constitute a waiver thereof * * *."

It is uncontroverted that appellant in this case did not comply with the mandate of Crim. R. 12(C). Furthermore, the court has, in *State* v. *Childs, supra* (14 Ohio St. 2d 56, 62), previously admonished:

"* * * Constitutional rights may be lost as finally as any others by a failure to assert them at the proper time. *State* v. *Davis*, 1 Ohio St. 2d 28."

Thus, we need not, upon review, consider appellant's assertions of improper search and seizure and illegal arrest, which counsel for appellant could have called, but did not call, to the attention of the trial court.

Apart from being defective procedurally, appellant's assertions that the police lacked sufficient probable cause to arrest appellant and, or, search the vehicle without a warrant are contrary to the evidence. The record recounts the following litany of events. Within a half-hour after the service station attendant heard the police broadcast concerning the robbery-murder at the Austin Beverage Store, a dark green Mercury drove into the service station. The passenger was clad in a red and yellow maxi-coat and was taller than the driver. The heretofore mentioned police broadcast had described the suspects as two blacks, one approximately six feet tall and wearing a red and yellow coat and the other five feet, five inches tall. After pumping the requested two dollars worth of gasoline, for which the attendant was paid in nickels and dimes, and refusing to check the alternator because he noticed the indicator light was not illuminated, the attendant serviced his two other customers while the Mercury remained. Upon the departure of the other two patrons, appellant began to approach the attendant, but with the arrival of another customer returned to his automobile and drove away. The attendant then called the Warren Police Department and gave them the license number.

Shortly thereafter, while patroling in the vicinity of

the service station, a police officer spotted an automobile bearing the license number reported by the service station attendant and pulled it over. Both occupants got out of the car, but, after the passenger said something to the driver they returned to the automobile. A police officer testified that one of the occupants wore a multi-color jacket. A search of the occupants revealed 13 or 14 .32 caliber bullets and some money. A shotgun in plain view behind the passenger's seat and a dark ski mask, a bag of potato chips and a bottle of wine on the seat were observed by the police.

We find that the preceding facts show that the police had probable cause not only to arrest appellant (see *State v. Timson* [1974], 38 Ohio St. 2d 122), but also to believe that the weapon used in the crime and the fruits of the crime were in the vehicle, especially considering that the arrest occurred within one and one-half hours of the commission of the crime and that appellant had within his possession at the time of his arrest 13 or 14 .32 caliber bullets. See *Chambers* v. *Maroney* (1970), 399 U. S. 42. Accordingly, appellant's sixth and seventh propositions of law are without merit.

## VII.

Appellant's last proposition of law, concerning the issue of attorney's fees, is not properly before this court, there having been no claim of error raised in the Court of Appeals nor decision by that court concerning this proposition. *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22; *State* v. *Williams, supra* (39 Ohio St. 2d 20).

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.