OPINION
Defendant James Russell appeals from his convictions for kidnapping with a sexual motivation specification, gross sexual imposition, and rape. For the reasons set forth below, we affirm.
On June 17, 1997, defendant was indicted pursuant to a four-count indictment in connection with an alleged assault upon a seventeen-year-old male. Count one charged defendant with kidnapping with a sexual motivation specification and a sexually violent predator specification. Count two charged defendant with gross sexual imposition. Counts three and four charged defendant with rape and a sexually violent predator specification. Defendant plead not guilty to the charges. The matter proceeded to trial on October 15, 1997.
The state's evidence demonstrated that its complaining witness, Carl Merritt, is developmentally disabled[1] and has an IQ, of 69, which is the bottom two percentile, as compared to the rest of the population. He is seventeen years old but functions approximately five years below his chronological age. The state also presented evidence that Merritt is easily influenced and is delayed in his perceptual and motor development. He is 5'4" and weighs 120 lbs.
The state further demonstrated that on April 30, 1997, Carl was suspended from Max Hayes High School where he attends a special education program. Merritt did not tell his parents that he was suspended but instead boarded the bus which he normally takes to school. He went to Tower City and window shopped. He had no money and no bus ticket to return home.
Carl was subsequently approached by defendant, whom he had met the previous year at Glenville High School when defendant was passing out flyers for a basketball program. Defendant asked Carl if he wanted to play basketball in a program which defendant was running at the Glenville YMCA[2] and showed Carl a flyer for an adult basketball league. Carl told defendant that he was seventeen and not an adult. Carl took a few steps away and defendant asked Carl if he was having troubles at home. Carl indicated that he was and defendant stated that he ran another program under which he permitted people with family troubles to stay at his house. As they left Tower City, defendant saw one of his friends and asked him to verify for Merritt that defendant provides shelter for people with problems. Defendant also told Merritt that he liked to spoil people and would give Merritt anything he wanted like jewelry, a compact disc player, or clothes. At this time Merritt reportedly "got caught up in" defendant's words.
The state also presented evidence that defendant asked Merritt to walk to the Justice Center with him. At this time, defendant reported to his probation officer. The probation officer previously told defendant that he was not to bring anyone with him when he reported to the probation office and that he was not to recruit for his basketball league in the probation office. The probation officer asked Carl how old he was and why he was not at school. Carl stated that there had been a fire at the school and the probation officer told him that defendant was "bad news" and to leave the building. The officer then reported the incident to his supervisor.
The supervisor, Peggy Parker, spoke with defendant. Defendant indicated that he had tested positive for the human immunodeficiency virus ("HIV") which causes acquired immune deficiency syndrome ("AIDS"). Parker discussed the problems attendant to a relationship with a young student and told defendant to stay away from Merritt. Defendant replied that he was not interested in Merritt in that way but had merely loaned Merritt money to get home.
Defendant followed Merritt back to Tower City and invited him to his apartment. They took the bus to Euclid. As they entered defendant's apartment, defendant got his mail and received a check. Defendant cashed the check, gave Merritt money and a bus pass. He also bought food at Wendy's. They returned to defendant's apartment and played checkers and other games. Defendant then asked Merritt to do push-ups. Merritt did so and defendant began massaging his back and got on top of him. Merritt started to cry. Defendant forced Merritt onto his back, lowered Merritt's jogging pants, and began to masturbate.
Merritt cried and screamed for help. Defendant told him to relax and massaged his genitals. Merritt next claimed that defendant forced him onto his "tummy" then anally raped him.
Defendant's cousin,[3] Robert Atwood, entered the apartment and defendant quickly dressed. Merritt pulled up his pants and started to flee. Defendant told Atwood to stop Merritt and Atwood threw Merritt to the floor and sat on his feet. Defendant then laid on top of Merritt then attempted to orally rape him. Atwood then fled the apartment and defendant got off of Merritt. Merritt washed.
Merritt and defendant left the apartment and phoned Merritt's home. Defendant reportedly told Merritt's sister that Merritt would be late coming home due to school work. To get home, Merritt took a bus to the Windermere Rapid Station, then a rapid to Tower City, then a bus to his home. He arrived home at 7:00 p.m. Merritt's father was extremely concerned about where Merritt had been and why he was so late. He questioned Merritt at length and eventually had Merritt show him where he had been. Merritt directed his father and older brother to defendant's apartment. His brother retrieved one of the flyers from the entranceway of the building.
The next morning, Merritt's mother drove him to school. As she walked him inside, one of Merritt's teachers indicated that Merritt was still under suspension. Merritt's mother then became concerned about where he had been the previous day. School officials eventually had Merritt speak to the school's safety director. At this time, Merritt reported that defendant had sexually assaulted him.
Merritt's mother took him to MetroHealth Medical Center where a rape examination was performed. The examination did not reveal evidence of injury. Semen was detected on the rear portion of Merritt's underwear, however.
Euclid Police Officers apprehended defendant at Tower City on May 7, 1997. Defendant initially told police that Merritt had merely spent time passing out flyers with him. He later stated that Merritt went to his apartment but did not come inside. Still later, defendant acknowledged that Merritt had been in his apartment but he claimed that Merritt was a homosexual and engaged in consensual sexual relations with him.
The matter was subsequently submitted to the jury. During deliberations, the jury asked the court to clarify whether a minor may consent to sexual contact and whether its findings in this matter were to be considered in deciding the sexually violent predator specification. The jury was given an instruction regarding the defense of consent and was told to disregard the specification. The jury subsequently found defendant guilty of kidnapping with a sexual motivation specification, gross sexual imposition, and one of the counts of rape.
The court later scheduled a hearing on the sexually violent predator specification. At this time, the state and defense counsel agreed that in exchange for the state dismissing the sexually violent predator specifications, the defendant agreed that he would be "classified as a sexual predator for reporting purposes after his release from prison." Defendant was eventually sentenced to consecutive terms of imprisonment on the offenses for which he was convicted. He now appeals and assigns four errors for our review.
Defendant's first and fourth assignments of error share a common basis in law and in the record and state as follows:
 APPELLANT JAMES RUSSELL WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO ELECT TO HAVE THE TRIAL COURT DETERMINE THE SEXUALLY VIOLENT PREDATOR SPECIFICATION PURSUANT TO R.C. 2971.02 UNTIL AFTER THE JURY HAD BEGUN DELIBERATIONS.
 THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING THE JURY TO HEAR EVIDENCE AND ARGUMENT REGARDING THE SEXUALLY VIOLENT PREDATOR SPECIFICATION CONTRARY TO R.C. 2971.02.
Within these assignments of error, defendant complains that his trial counsel was ineffective for failing to elect to have the trial court determine the sexually violent predator specification, and this failure exposed the jury to inherently prejudicial information prior to their deliberation on the charges.
In order to establish a claim of ineffective assistance of trial counsel, a defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687. Accord, Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
In applying the first prong of the Strickland analysis, i.e., determining whether counsel made serious errors, we note that R.C. 2971.03 provides in relevant part as follows:
 * * * the defendant may elect to have the court instead of the jury determine the [sexually violent predator specification.] If the defendant does not elect to have the court determine the specification, the defendant shall be tried before the jury on the charge of the offense, and, following a verdict of guilty on the charge of the offense, the defendant shall be tried before the jury on the sexually violent predator specification. If the defendant elects to have the court determine the specification, the defendant shall be tried on the charge of the offense before the jury, and, following a verdict of guilty on the charge of the offense, the court shall conduct a proceeding at which it shall determine the specification.
The statute does not set forth a time for making this election. However, in construing R.C. 2941.142, which permitted an accused to make an election to bifurcate specifications under the pre-Senate Bill 2 Criminal Code, this court in State v. Byrd (1985),26 Ohio App.3d 91, 93, stated as follows:
 Any request capable of determination before trial may be raised before trial by motion. Crim.R. 12(B). Crim.R. 12(C) provides such motions should be made thirty-five days after arraignment or seven days before trial, whichever is earlier. The failure to comply with the time limitations of Crim.R. 12(C) constitutes a waiver of the right to request a separate hearing on the prior offense specification before the trial judge. Crim.R. 12(G); see State v. Wade (1978) 53 Ohio St.2d 182.
Thus, by analogy, we conclude that a motion to elect to have the trial court determine the sexually violent predator specification must also be made at least seven days before trial.
In this instance, no election was made at any time.
In addition, there were brief references in argument as to whether defendant acted as a sexual predator and the term sexual predator was defined in the charge of the court. The jury's verdict forms for determining defendant's guilt on the charges also contained a provision for the determination of the sexually violent predator specification.
While we do not hold herein that the failure of trial counsel to submit the specification to the court was erroneous as a matter of law, we do find that error occurred in connection with the manner in which this matter was presented to the jury. In particular, we conclude that it was erroneous to permit the references in argument on the underlying charges as to whether defendant acted as a sexual predator. Similarly, it was erroneous for the court to define the term sexual predator in its charge to the jury and to include a provision for finding defendant guilty or not guilty on this specification within the jury's verdict forms for determining defendant's guilt on the underlying charges.
We believe that the correct practice is for the underlying charges to be determined first and, if there is a finding of guilty to any count containing a sexually violent specification, the issue of defendant's guilt on this specification is to be addressed at a later time, and in a separate proceeding. R.C.2971.02. State v. Bexley (July 2, 1998), Hamilton App. No. 970539, unreported.
Nonetheless, in applying the second prong of the Strickland
analysis, i.e., determining whether counsel's errors deprived defendant of a fair trial, we are unable to conclude that this procedure or the brief references in the record concerning whether defendant acted as a sexual predator in connection with this matter prejudiced defendant herein. First, there is no basis from which we may conclude that the jury was prejudiced in deciding defendant's guilt on the charges as the jury in fact acquitted defendant of one of the rape charges leveled against him. Secondly, the record reveals that at the start of the court's hearing on the sexually violent predator specification, the state and the defense entered into an agreement whereby, the defendant agreed that he would be "classified as a sexual predator for reporting purposes after his release from prison" in exchange for the state dismissing the sexually violent predator specifications. The record further reveals that the specifications were in fact dismissed. We therefore cannot conclude that defendant was prejudiced in this matter. The fourth assignment of error is accordingly without merit.
Moreover, in the absence of a showing that counsels errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable, we cannot conclude that defendant's trial counsel was ineffective.
The first and fourth assignments of error are not well-taken.
Defendants second assignment of error states:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING THE DEFENSE REQUEST TO INSTRUCT THE JURY THAT CONSENT IS AN ABSOLUTE DEFENSE TO RAPE.
Defendant next complains that the trial court should have instructed the jury, within its original charge, that consent negated culpability.
Courts considering this issue generally look to the charge as a whole. In State v. Walker (May 6, 1993), Cuyahoga App. No. 62293, unreported, this court rejected the defendant's contention that the trial court erred in failing to instruct the jury on the issue of consent. This court concluded that the court's instructions on force were sufficient to obviate the need for an instruction on consent. Accord State v. Street (June 18, 1993), Morrow App. No. CA-780, unreported. See, also, State v. Cummings
(April 5, 1990), Franklin App. No. 89AP-866, unreported (the consent defense is a "failure of proof" defense, meaning that the state has failed to carry its burden of proof that the acts were the result of force).
In this instance, the court did not include an instruction on consent within its original charge. Nonetheless, after the jury inquired as to whether an unmarried minor could consent to sexual contact with an adult, the court further instructed the jury as follows:
 * * * it is the law in Ohio that an individual age thirteen or over is presumed to be able to consent to sexual contact. It is for you the jury to determine in this case, one: whether Carl Merritt "did in fact consent to sexual contact with the defendant; and two: if so, whether Carl Merritt's ability to resist or consent was substantially impaired because of a mental or physical condition.
(Tr. 839). Thus, viewing the original charge together with this supplemental charge concerning the law of consent, it is clear that this assignment of error lacks support in the record.
The second assignment of error is without merit.
Defendants third assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING IRRELEVANT AND UNFAIRLY PREJUDICIAL TESTIMONY THAT APPELLANT JAMES RUSSELL HAD TESTED POSITIVE FOR THE HIV VIRUS.
Within this assignment of error, defendant asserts that the trial court erroneously and prejudicially permitted introduction of evidence that he was HIV positive.
Evid.R. 401 states:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
It is within the sound discretion of the trial court to apply its common experience and logic to determine the relevance of evidence. State v. Lyles (1989), 42 Ohio St.3d 98, 99-100. A reviewing court is to only overturn the rulings of the trial court where there is a clear abuse of discretion and that abuse has materially prejudiced the defendant. Id., at 99-100.
Evid.R. 403 states:
 (A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
In this instance, the state maintained that defendant took advantage of Carl Merritt's developmental disability and raped him. Defendant maintained that Merritt was a homosexual who was far more sophisticated than his parents realized and that Merritt consented to engaging in unprotected sexual conduct with him. The evidence of defendant's HIV status was therefore extremely probative of the issue of Merritt's consent. This evidence was also probative of defendant's intent in this matter because shortly before defendant and Merritt went to defendant's apartment, Probation Supervisor Peggy Parker discussed defendant's HIV status with him. She also discussed the potential problems attendant to defendant having a relationship with Merritt and instructed defendant to stay away from him. At this time, defendant indicated that he was not interested in Merritt in that way and that he had simply loaned Merritt money.
Although some prejudice conceivably arises in connection with this evidence, we are unable to conclude that the trial court abused its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Cf. State v. Ortiz (Nov. 14, 1996), Cuyahoga App. No 69958, unreported (this court held that the trial court did not abuse its discretion in permitting introduction of evidence that the defendant, who was charged with raping a resident of a group home, feared getting AIDS and inquired whether any of the residents had the HIV virus).
The third assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ROCCO. J., AND BLACKMON. J., CONCUR.
 ANN DYKE PRESIDING JUDGE
[1] "The state further demonstrated that this diagnosis is the state law equivalent to the term "retarded" which is used in applying certain federal laws.
[2] Defendant was not actually employed by the YMCA but merely rented the gymnasium for his basketball league.
[3] Robert Atwood and defendant were jointly indicted on counts one and two but the charges against these co-defendants were severed by the trial court.