DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which sentenced defendant-appellant, Merle Ulch, III, to a three year term of incarceration after a jury found him guilty of child endangerment in violation of R.C. 2919.22(B)(2) and (E)(3). From that judgment, appellant now raises the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THE CHILD INCOMPETENT TO TESTIFY WITHOUT CONDUCTING A COMPETENCY HEARING.
"SECOND ASSIGNMENT OF ERROR
 THE EGREGIOUS CONDUCT OF THE DETECTIVE IN INTERVIEWING APPELLANT, AND IN HER SWORN TESTIMONY, CAUSED THE JURY TO LOSE ITS WAY IN ITS VERDICT."
On the evening of February 14, 2000, Sherri Frosch left her three year old daughter, Danielle Sullivan, at home in the care of Frosch's boyfriend, appellant Merle Ulch, when she went to work. When she returned home at approximately 10:00 p.m., Danielle's head was badly bruised and she was sitting on appellant's lap. Frosch immediately took Danielle to the hospital, stopping along the way to pick up her mother, Linda Frosch. At the hospital, an examination of Danielle revealed multiple bruises on her head, chest, ears and back. When questioned about the bruises, Danielle said that "Punky did it." "Punky" is appellant's nickname. Danielle was admitted to the hospital for tests, including a CT scan and x-rays. The tests revealed a slight fracture of the tibia. In addition, medical personnel feared that she may have a concussion and so kept her overnight for observation. She was released from the hospital the next day.
Subsequently, appellant was indicted and charged with one count of child endangerment resulting in serious physical harm, in violation of R.C. 2919.22(B)(2) and (E)(3), a second degree felony. After entering a plea of not guilty, appellant filed a motion for a competency hearing of Danielle. Appellant asserted that the state intended to use Danielle's hearsay statements without her testifying at trial and, as such, a judicial determination of her ability to testify was necessary to protect appellant's right of confrontation. Thereafter, the state filed a motion for the admission of Danielle's hearsay statements pursuant to Evid.R. 807.
On September 18, 2000, immediately before commencing the trial in this matter, the court held a hearing on both Danielle's competency to testify, pursuant to Evid.R. 601, and on whether Danielle's statement's could be admitted pursuant to Evid.R. 807. At the beginning of the hearing, however, the state agreed that, based on the standards set forth in Evid.R. 601, Danielle was not competent to testify. The court did not interview Danielle but made a finding, based on the state's assertion, that Danielle was not competent to testify. Appellant did not object to this finding or to the state's assertion. The court then proceeded to review the issues regarding the admissibility of Danielle's hearsay statements under Evid.R. 807. Prior to taking evidence on those issues, the court asked for a stipulation that Evid.R. 807(A)(2) was satisfied because Danielle was not competent to testify. Appellant refused to so stipulate. Nevertheless, the court held that based on the state's previous assertion, Danielle was not competent to testify. Appellant objected to this finding. The court then heard testimony from Jacqueline Sullivan and Thomas Doom, nurses who attended to Danielle at the hospital, Sherri Frosch, Danielle's mother, and Linda Frosch, Danielle's grandmother. At the conclusion of the hearing, the court held that Danielle's hearsay statements attributing her injuries to appellant were inadmissible. The case then proceeded to trial.
At the trial below, the state presented five witnesses against appellant: Linda Frosch, Jacqueline Sullivan, Thomas Doom, Detective Laura Bliss, and Dr. Michael Ruhlen. Appellant presented one witness in his defense: Sergeant Greg Brillhart. At the conclusion of the trial, the jury found appellant guilty of endangering children. In addition, the jury specifically found that appellant caused serious physical harm to Danielle. It is from that judgment and the subsequent sentence that appellant now appeals.
In his first assignment of error, appellant asserts that the trial court erred in holding Danielle incompetent to testify without holding a competency hearing.
Initially, we note that appellant filed his motion for a competency hearing in order to protect his right to confront the witnesses against him and to prevent the admission of Danielle's hearsay statements. After the court held a hearing pursuant to Evid.R. 807, the court held that the hearsay statements which implicated appellant were not admissible. Accordingly, appellant prevailed in the court below on this issue. Appellant now asserts, however, that his right to a fair trial was somehow prejudiced by the court's determination that Danielle was incompetent to testify without first conducting a face-to-face voir dire of her. Danielle's testimony, appellant claims, was essential in determining his guilt or innocence.
Evid.R. 601 provides in relevant part that:
"Every person is competent to be a witness except:
 "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
In State v. Said (1994), 71 Ohio St.3d 473, 476, the Supreme Court of Ohio determined that a trial court must hold a competency hearing before admitting the testimony of a child under ten years of age.
 "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful." State v. Frazier (1991), 61 Ohio St.3d 247, the syllabus.
These factors, however, are aimed at protecting the accused by ascertaining that a child witness is trustworthy. In a situation, such as that presented in this case, we see no prejudicial error in a court's determination, without a hearing, that a child witness is incompetent to testify where that child's hearsay statements are never used against the accused. The first assignment of error is not well-taken.
In his second assignment of error, appellant challenges the testimony of Detective Bliss and asserts that in relying on this testimony to convict him, the jury lost its way. Essentially, what appellant is attacking through this assignment of error is Detective Bliss's use of the Reid Technique in obtaining appellant's confession.
Detective Bliss testified at the trial below that on February 16, 2000, appellant arrived at the Sylvania Police Department to talk about Danielle's injuries. Detective Bliss stated that appellant was not under arrest and that when he arrived he appeared calm but somewhat sad. Initially, appellant told Bliss that Danielle had been jumping on his waterbed and had fallen off. Appellant further told Bliss that when Danielle fell off of the bed, a table and lamp fell on top of her. Appellant then said that he put ice on Danielle's head and laid her down on his lap. Then, when Sherri returned home, she took Danielle to the hospital. Appellant, however, then told Bliss that Danielle may have sustained injuries outside of the bedroom. Appellant told Bliss that although Danielle's head injury occurred when she fell off of the bed, her other injuries may have occurred when he was roughhousing with her. As part of that roughhousing, appellant admitted that he hit Danielle in the stomach. At this point during the interview, appellant began to cry and Bliss initiated what is known as the Reid Technique to encourage appellant to talk. Bliss explained that the Reid Technique is an interviewing technique in which the interviewer establishes a common ground between herself and the subject to create a relationship. Using this technique, Bliss told appellant that she had done things to her own child that she was not proud of. She also told appellant that Danielle exhibited bruising that included knuckle marks in the chest area and that marks on her forehead indicated that she had been hit by an adult male's hand. These statements were false, but Bliss testified that as part of the Reid Technique, once a suspect indicates that he is interested in taking responsibility for an offense, the interviewer introduces evidence, whether real or imagined, pointing in the suspect's direction. Bliss testified that she made these statements to appellant after he indicated that he wanted to take responsibility for Danielle's injuries. Appellant then told Bliss that he was unable to tell her what happened but that he would write it down.
Appellant proceeded to complete a form entitled a "Voluntary Statement." This "Voluntary Statement" was admitted into evidence at the trial below. In that statement, appellant wrote that he had been wrestling with Danielle on the couch and floor when Danielle ran at him. He then put out his fist and she ran into it hard. She then fell back and hit the stereo stand. The two continued to "play." Danielle then ran at appellant again and he hit her in the forehead with his fist. Appellant admitted in his statement that he hit her too hard.
Detective Bliss continued to testify about her interview of appellant. Bliss stated that before he wrote his voluntary statement, appellant admitted that his wrestling with Danielle was like that in World Wide Wrestling and that he had been playing with her too roughly.
On cross-examination, Detective Bliss admitted that, consistent with the Reid Technique, she lied to appellant in an attempt to get him to talk to her and that when he tried to deny any wrongdoing she cut him off and would not allow him to deny wrongdoing. She also testified that although it was okay to lie to a suspect she was not lying in court.
Initially, we note that appellant did not file a motion to suppress the written or oral statements he made to Detective Bliss. Accordingly, appellant waived any argument he may have had regarding the admissibility of this evidence. Crim.R. 12(B)(3) and 12(G); State v. Wade (1978),53 Ohio St.2d 182, paragraph three of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911. Nevertheless, he contends that by hearing this evidence, the jury lost its way in convicting him. In Statev. Beauregard (Dec. 1, 1995), Lucas App. No. L-94-359, unreported, we addressed a situation in which a criminal defendant was tricked into making incriminating statements by a childhood friend who was a police informant. In finding no due process violation, we stated:
 "Those who commit criminal acts have an inherent desire to conceal these acts from the authorities. To this end, criminals will lie, deceive, divert, disguise, and conceal. Law enforcement is confronted with the task of unmasking these ploys. Therefore, while a coercion of confession is forbidden by the law, `* * * mere strategic deception by taking advantage of a suspect's misplaced trust * * *' remains a viable and acceptable tactic. Illinois v. Perkins [(1990), 496 U.S. 292,] 298; see, also, Alexander v. Connecticut (2 C.A. 1990), 917 F.2d 747, 750-751."
While the situation in the present case involves police questioning, rather than the use of a police informant, we fail to see how Detective Bliss's use of lying techniques to encourage appellant to make a statement violated his right to due process or caused the jury to "lose its way" in convicting appellant. Finally, the record is clear that appellant's trial counsel thoroughly cross-examined Detective Bliss and presented the jury with ample evidence of the detective's use of falsehoods in obtaining appellant's statement. It was clearly within the province of the jury to determine which witnesses were worthy of belief.
The second assignment of error is therefore not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., Richard W. Knepper, J., Mark L. Pietrykowski,P.J., JUDGES CONCUR.