OPINION
{¶ 1} Appellant, Nathaniel Towler, appeals from the November 26, 2007 judgment entry of the Portage County Municipal Court, Kent Division, in which he was sentenced for assault.
 {¶ 2} On July 3, 2007, appellee, the state of Ohio, filed a complaint against appellant for assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A). *Page 2 
Appellant entered a not guilty plea at his initial appearance, and the matter proceeded to a jury trial.[1]
 {¶ 3} A jury trial was held on November 19, 2007.
 {¶ 4} At the trial, Nicole Jaap ("Jaap") testified for appellee that on June 26, 2007, she pulled her new vehicle into the Clark Gas Station on the corner of Route 43 and Hall in Kent, Portage County, Ohio. Jaap noticed appellant's car pull into the station, heading directly toward her front bumper. Fearful he would hit her car, Jaap threw her hands up, wondering if appellant was going to stop. She stated that appellant existed his car and screamed vulgarities like, "* * * you bitch, why don't you move, move your f-ing car, you fucking bitch."
 {¶ 5} According to Jaap, appellant approached another woman at the station, shaking a trash can against her like he was going to pick it up and throw it. Jaap testified that appellant got in her face, shaking his clenched fist and yelling: "* * * you better move your car, you fucking bitch, you white bitch, you better move your car." Jaap said that because appellant was waving his fist like he was going to hit her, she spit in his face. She stated at that time, appellant punched her in the face on her left cheekbone. Jaap fell to the ground and she said that appellant continued to hit her twice with a closed fist. Jaap called appellant "a nigger."
 {¶ 6} Heather Bailey ("Bailey") testified for appellee that she was at the Clark Gas Station on the day at issue, and witnessed appellant pointing and yelling profanities at Jaap. She also saw appellant punch Jaap, at least two times. As Bailey called the police and wrote down appellant's license plate number, she said that he threatened *Page 3 
her. Bailey stated that appellant said "* * * he should have flattened me out, just like he did the other bitch."
 {¶ 7} Officer Norman L. Jacobs ("Officer Jacobs"), with the Kent Police Department ("KPD"), testified for appellee that he was dispatched to the Clark Gas Station after the incident. He spoke with both Jaap and Bailey. Officer Jacobs noticed physical marks on Jaap. He indicated that the witnesses he spoke with at the scene described appellant as the aggressor.
 {¶ 8} According to appellant, before he even got out of his vehicle at the station, Jaap approached him, calling him a "fucking nigger." When he got out of his car, appellant indicated that Jaap said to him, "* * * fucking nigger, don't touch my car." He responded, "fuck you, bitch," and he walked away from her. Appellant said that Jaap came up to him, called him a "fucking nigger" again, and spit in his face. At that time, appellant stated that he punched Jaap and she fell to the ground.
 {¶ 9} Appellant left the gas station, called 9-1-1, and was told to go to the police department. Appellant indicated that he lied, and said that he had to pick up his grandson from the hospital. He later called Ronald Holiday ("Holiday"), a retired officer with the KPD, to ask his advice. Appellant turned himself in to the police, with Holiday present. Appellant was arrested and charged with assault.
 {¶ 10} Following the trial, the jury returned a guilty verdict.
 {¶ 11} Pursuant to its November 26, 2007 judgment entry, the trial court sentenced appellant to one hundred eighty days in jail, with one hundred sixty days suspended, and ordered him to pay a fine in the amount of $1,000, with $900 suspended. Appellant's sentence was stayed pending appeal. It is from that judgment *Page 4 
that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 12} "The trial judge in this matter engaged in a pervasive pattern of hostility and bias throughout the proceedings which combined to deprive [appellant] of his right to a fair trial."
 {¶ 13} In his sole assignment of error, appellant argues that the trial judge engaged in a pattern of hostility and bias which deprived him of his right to a fair trial.
 {¶ 14} This court stated in State v. Smith, 11th Dist. Nos. 2006-P-0101 and 2006-P-0102, 2008-Ohio-3251, at ¶ 40-41:
 {¶ 15} "Pursuant to R.C. 2945.03, `(t)he judges of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding matters in issue.' See, also, State v.Miller, 11th Dist. No. 2004-T-0092, 2005-Ohio-5283, at ¶ 20. Further, in presiding over a trial, a judge must be cognizant of the effect of his or her remarks upon the jury. State v. Wade (1978), 53 Ohio St.2d 182,187, * * *. However, this does not imply a judge is precluded from making remarks during the course of a trial. State v. Hardy (Oct. 10, 1997), 11th Dist. No. 96-P-0129, 1997 Ohio App. LEXIS 4588, [at] 20. An appellate court reviewing the propriety of a judge's remarks before a jury must determine whether the comments were prejudicial to a defendant's right to a fair trial. Wade, supra, at 188; see, also,Miller, supra, at ¶ 21.
 {¶ 16} "To aid in this determination, the Supreme Court of Ohio has stated that courts shall adhere to the following rules: `(1) The burden of proof is placed upon the *Page 5 
defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.'Wade, supra." (Parallel citation omitted.)
 {¶ 17} Canon 1 of the Code of Judicial Conduct requires a judge to uphold the integrity and independence of the judiciary. Canon 2 requires a judge to respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
 {¶ 18} In the case at bar, appellant contends that the trial judge's hostility was evident during voir dire, opening statements, and the testimony of Jaap, Bailey, and Officer Jacobs, as well as during his own testimony.
 {¶ 19} We remind ourselves that a defendant is entitled to a fair trial, not a perfect one. See United States v. Hasting (1983),461 U.S. 499, 508-509; State v. Lott (1990), 51 Ohio St.3d 160, 166.
 {¶ 20} During voir dire, the trial judge interjected comments throughout both appellee's and defense's questionings. A review of the transcript reveals that early in defense counsel's voir dire, the judge responded by saying that the questions should not ask the juror to put themselves in the place of appellant or another person. The judge explained that voir dire questions should ask about the juror's background and experience, or ask if the person can be a fair juror. However, defense counsel continued to ask questions, which required the potential juror to put himself or herself in *Page 6 
the position of another person on three more occasions. Clearly, appellant's representative disregarded the judge's ruling, which properly prompted repeated comments from the judge on this issue. Thus, if the jury inferred anything from the exchange, it was not a result of the judge's comments, but rather due to defense counsel's repeated attempts to not follow the judge's ruling.
 {¶ 21} Also, a review of the transcript establishes that the trial judge also commented during appellee's voir dire, which included correcting misstatements of the law, requesting clarification of phrases or questions before allowing prospective jurors the opportunity to respond, and requiring questions of whether the prospective jurors could be fair and follow the court's instructions.
 {¶ 22} Appellant has shown that the trial judge exhibited hostility during voir dire. However, based upon the subsequent evidence properly introduced, we do not see it as affecting the outcome of the trial or the jury's eventual finding of guilty. Appellant received an imperfect but fair trial.
 {¶ 23} Prior to opening statements, the trial judge properly instructed the jury that opening statements are not evidence, but rather are designed as a means for the attorneys to indicate what they believe the evidence will show. The judge also stated to the jury that during closing arguments, the attorneys argue what they believe the evidence has shown, and try to convince them that their position is correct.
 {¶ 24} Here, the transcript demonstrates that defense counsel went beyond the parameters of an opening statement. Appellant's representative stated what the case was about, and what the jury would expect to hear from appellee's witnesses. However, defense counsel went on to argue the following: *Page 7 
 {¶ 25} "[Defense Counsel]: "* * * [Y]ou won't hear from the state, nor did you just hear from the state, of exactly what [Jaap] did. That's why this case requires you all's (sic) decision. That's why this case requires your own sense of reasonableness and personal experiences. That's why this case will call upon —
 {¶ 26} "THE COURT: This is not argument, Mr. Madison. It's all what you think the evidence will show. You can argue at the end of the case."
 {¶ 27} The foregoing colloquy represents the trial judge properly reminding appellant's representative of the purpose of an opening statement. Although there was hostility against defense counsel and/or appellant during opening statements, it would not affect the finding of guilt of appellant.
 {¶ 28} With respect to the testimony of Jaap, appellant takes issue with the following exchange between defense counsel and the trial judge during cross-examination:
 {¶ 29} "[Defense Counsel:] Now if there's any question I ask you don't understand, please let me know that. All the same, if you answer, I'm going to assume you understood the question. Fair? All right.
 {¶ 30} "THE COURT: Try not to make any statements. The next time you stand up, just ask the questions, okay, please? I don't want people making statements. Your duty is to ask questions. Go ahead."
 {¶ 31} Although highly improper and bordering on hostile, we do not find that it would alter the ultimate verdict in this case.
 {¶ 32} Defense counsel then proceeded to cross-examine Jaap from the statement she made to the police on June 27, 2007. The trial judge told appellant's *Page 8 
representative that he needed to let him examine the statement before he could cross-examine from it, and that if there were not inconsistencies, he could not ask questions on it. Again, defense counsel did not like the trial judge's interjection, and, following a brief exchange, the trial judge said: "Mr. Madison, please, don't argue in front of the jury. I'm going to dismiss the jury — [.]"
 {¶ 33} Appellant also takes issue with another exchange between his counsel and the trial judge, referring to pages 89-95 of the trial transcript. However, we note that the exchange occurred outside the presence of the jury. Thus, it could not have any impact on them.
 {¶ 34} After the jury returned, defense counsel continued to cross-examine Jaap. Apparently, appellant's representative began to have a very loud tone in his voice, and the trial judge told him to please not get argumentative with Jaap, and to just ask questions politely.
 {¶ 35} In addition, appellant maintains that the trial judge improperly usurped the jury's role due to the following exchange which occurred during the cross-examination of Jaap:
 {¶ 36} "[Defense Counsel:] Now Ms. Jaap, you mentioned, you just responded that he shook it [the trash can] as if he was gonna pick it up. Okay. That's different from what you testified to earlier.
 {¶ 37} "THE COURT: No. I think that's what she said. She said she thought he might be going to pick it up.
 {¶ 38} "[Defense Counsel]: Well, the jury — you realize there's a jury here and —[.]" *Page 9 
 {¶ 39} We note that the trial judge's recall of Jaap's testimony was correct, as she stated on direct examination: "He kind of shook the trash can against her, like he's gonna pick it up and throw it."
 {¶ 40} We agree that the trial judge exhibited inappropriate hostility against defense counsel and/or appellant during the testimony of Jaap. However, the testimony itself, even without the diatribe by the judge, was conclusive.
 {¶ 41} Appellant also takes issue with the cross-examination of Bailey. He contends that the trial judge interfered with the questioning, accused his counsel of being hostile toward the witness, and aided the prosecution. Specifically, we consider the following exchange:
 {¶ 42} "[Defense Counsel:] * * * And what was the first act of aggression you noticed?
 {¶ 43} "[Bailey:] He got very close into her face and was pointing his finger at her.
 {¶ 44} "[Defense Counsel:] Well, you also testified he was in your face, he didn't punch you though, did he?
 {¶ 45} "[Bailey:] No, that was after he had already punched her.
 {¶ 46} "[Defense Counsel:] Well, let me ask you this question. What was the first physical contact made by those two persons who were arguing — Ms. Jaap or Mr. Towler?
 {¶ 47} "[Bailey:] Well, Mr. Towler had initiated the argument and then, like I said, had gotten right up in her personal space and then, I'm not exactly sure what was said, but she did spit in his face. *Page 10 
 {¶ 48} "[Defense Counsel:] So then the answer to the question about the first physical contact would be Ms. Jaap.
 {¶ 49} "[Prosecutor]: Objection. That is not what she said. That's what Mr. Madison would like her to state.
 {¶ 50} "[Defense Counsel]: I asked physical. I specifically asked physical. Physical contact.
 {¶ 51} "THE COURT: I don't know what you mean by — wait, we don't know the definition of physical contact.
 {¶ 52} "[Defense Counsel]: Who touched who —
 {¶ 53} "THE COURT: Hold on a second, young lady, hold on. She's testified as to what happened. We don't need to characterize it by the words. That's up to the jury to determine. Go on with another question.
 {¶ 54} "[Defense Counsel:] She spit on him first?
 {¶ 55} "THE COURT: She's already testified to that. Ask another —
 {¶ 56} "[Defense Counsel:] Never punched Mr. Towler?
 {¶ 57} "[Bailey:] Yes, she never laid a hand on Mr. Towler.
 {¶ 58} "[Defense Counsel:] She spit on him, though.
 {¶ 59} "[Bailey:] She never laid a hand on Mr. Towler, though. She did not physically touch Mr. Towler. And clearly she was in a state of panic and under a larger man coming after me personally, probably would have done something —
 {¶ 60} "[Defense Counsel:] I'm not asking —
 {¶ 61} "THE COURT: Let her answer the question.
 {¶ 62} "[Defense Counsel:] I'm not asking — *Page 11 
 {¶ 63} "THE COURT: Mr. Madison, let her answer the question! Continue to say what you were saying."
 {¶ 64} Here, although the trial judge's remarks seem to be hostile in tone, they do not amount to prejudicial bias. Defense counsel needed to let Bailey answer the question. Appellant's representative later disregarded the trial court's ruling to move on to another question after Bailey testified that Jaap spit on appellant before appellant hit Jaap. The tone on the cross-examination seems to establish how unwilling defense counsel was to accept the answer provided by Bailey, if it did not conform to the defense's theory of self defense. Appellant's counsel was dissatisfied with Bailey's answer with respect to her reaction to appellant's threats, the trash can, and photographs of Jaap's injuries, which prompted him to re-ask the question. The trial court properly intervened, ruled that Bailey had answered the question, and instructed defense counsel to proceed to the next area of his cross-examination.
 {¶ 65} The trial judge's behavior was inappropriate and placed both appellant and the state in a very difficult position during the testimony of Bailey. Toward the end of the cross-examination of Bailey, the trial judge stated: "Mr. Madison, it is my duty to make order in the courtroom, and to determine whether both sides are getting a fair trial. When I see that it's not going that way, then I'm going to interrupt it. Whether it's you, or whether it's the prosecutor."
 {¶ 66} Next, appellant contends that the trial judge continued his pattern of hostility and bias toward his counsel during the cross-examination of Officer Jacobs. Appellant takes issue with several exchanges between his representative and the trial judge. However, some of the instances that appellant cites to in his appellate brief *Page 12 
occurred outside the presence of the jury. Thus, those could not have any impact on them.
 {¶ 67} We will analyze the remaining citations to Officer Jacobs' testimony which took place before the jury. Defense counsel attempted to use an individual's written statement that was contained in a police report without calling the person as a witness. Appellant's representative challenged Officer Jacobs' testimony that the three people who provided witness statements at the scene primarily said the same thing. Defense counsel attempted to read a written police statement by Terry Copen ("Copen"), one of the three individuals, to the jury to compare its content with Bailey's testimony. The trial court correctly instructed defense counsel that it was not proper to get into Copen's written statement during the cross-examination of Officer Jacobs. Also, a review of the transcript reveals defense counsel's frustration for his failure to establish the elements of his self defense claim.
 {¶ 68} We agree with appellant that the trial judge exhibited hostility toward defense counsel and/or appellant during the testimony of Officer Jacobs.
 {¶ 69} Finally, appellant argues that the trial judge was hostile and biased during his testimony. During appellant's direct examination, he provided a different version of the incident than appellee's witnesses. Again, he alleged that Jaap was the aggressor and that she was the one that first started the vulgar name calling. Appellant's representative began asking leading questions. The trial judge instructed him to conduct his direct examination without leading questions. Defense counsel disregarded the instruction and continued asking leading questions, alleging that they were only with regards to "preliminary issues." He asked additional leading questions, then argued *Page 13 
with the trial judge as to whether his questions were in fact leading. Specifically, the following exchange took place:
 {¶ 70} "[Defense Counsel:] Judge, these are not leading questions. I beg to differ with you.
 {¶ 71} "THE COURT: Any time it has to be answered yes or no, it's leading. Go ahead, ask another question. * * *
 {¶ 72} "[Defense Counsel:] The statement that you provided-
 {¶ 73} "THE COURT: No, you're not going to do it that way. You're not going to bolster his testimony by saying what he told the police that night is the same as what he's telling the court today. It's not going to happen, Mr. Madison. Ask another question. He's already admitted he lied to the police once. So go ahead, ask another question.
 {¶ 74} "[Defense Counsel:] I ask that that not appear in the record your honor. We don't need you trying the case for the state.
 {¶ 75} "THE COURT: I'm not trying the case for the state.
 {¶ 76} "[Defense Counsel:] It appears that way, and you're infringing on my client's right to have a fair trial.
 {¶ 77} "THE COURT: Don't argue with me.
 {¶ 78} "[Defense Counsel:] I'm not trying to argue with you, but you inject your personal opinion in the record —
 {¶ 79} "THE COURT: It wasn't my personal opinion. He admitted he lied to the police. That's not a personal opinion, Mr. Madison. That's his statement. That's a little different than a personal opinion." *Page 14 
 {¶ 80} Appellant failed to carry his burden with regard to theWade factors. The attitude and behavior of the trial judge throughout the proceedings, although bordering on unprofessional at times, does not rise to the level of misconduct warranting a reversal of appellant's conviction. As such, appellant fails to show that the outcome would have been different.
 {¶ 81} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Portage County Municipal Court, Kent Division, is affirmed. It is the further order of this court that costs are waived since appellant appears from the record to be indigent. The court finds that there were reasonable grounds for this appeal.
TIMOTHY P. CANNON, J., concurs, DIANE V. GRENDELL, P.J., concurs in judgment only.
[1] On October 9, 2007, appellant filed a waiver of his R.C. 2945.71
right to have the matter tried within ninety days. *Page 1