JUDGMENT: Affirmed
 OPINION
Defendant-appellant Ronald Cassidy appeals the December 1, 1998 Judgment Entry of the Stark County Court of Common Pleas which adjudicated appellant a sexual predator and sentenced appellant on his convictions for rape and gross sexual imposition. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On September 6, 1997, appellant rode his bike to the home of his nine-year-old neighbor, Melody Lopez. Appellant, then thirty-five years old, invited Melody to go fishing with him. Although Melody's mother was not home, she agreed to go. Instead of going fishing, appellant took Melody to an abandoned house. At trial, Melody testified she entered the abandoned house at appellant's direction because she needed to use the bathroom. The plumbing was not functional, but Melody decided to use the bathroom anyway. When she was finished, appellant used the bathroom. While Melody waited for appellant, she sat on an old mattress on the first floor of the house. When appellant came out of the bathroom, Melody noticed appellant was drinking a beer out of a large bottle in a paper bag. Appellant told Melody to go upstairs and she complied. Upstairs, there was another old mattress on the floor. Appellant sat down on the mattress and drank his beer. At some point, appellant poured beer on Melody and then threatened to tell her mother she had been drinking beer. Melody said she wanted to leave and proceeded downstairs. As she was about to leave the house, appellant stopped her, touching the front of her shirt. Appellant then moved his hand under her shirt and onto her chest. Melody testified she told appellant not to do that, but appellant told her "it would be okay." Melody testified she was afraid of appellant, and when he told her to return upstairs, she complied. When she was back upstairs, appellant touched her chest and her vaginal area with his hands. Appellant unzipped his pants, removed his penis, and directed Melody to put her mouth on it. Melody testified she did so. Appellant next told Melody to take off her pants. Appellant had a knife which he placed close to her neck. Melody again complied because she was afraid of appellant. At appellant's direction, Melody laid face down on the dirty mattress. Appellant raped the child at knife-point. When he was finished, appellant told Melody if she told anyone what had happened, he would kill her family and her three-year-old nephew. Melody testified she believed him because he had a knife. It was dark when Melody and appellant rode their bikes back to Melody's house. Melody's mother, Sue Carnahan, had called the police when she was unable to find Melody. In fact, the police officer had just arrived when appellant and Melody appeared on their bikes. Ms. Carnahan was very upset, ordering Melody into the house and yelling at appellant for taking her child without her permission. The police officer instructed Ms. Carnahan to calm down before talking to her daughter, just to make sure nothing out of the ordinary had occurred. Because she was so upset, Ms. Carnahan sent her adult daughter, Destiny Carnahan, to speak to Melody. Eventually, Melody told her sister what had happened. At trial, Ms. Carnahan testified Destiny came downstairs crying and explained what had happened. Ms. Carnahan told Destiny to stay with Melody, and give Melody a bath to calm her down. Ms. Carnahan called the police. After explaining the situation, the officer asked where Melody was. When Ms. Carnahan explained she was taking a bath, the officer instructed Ms. Carnahan to take her daughter out of the tub immediately. Melody, her mother, and her sister went to the hospital for the rape examination. At the hospital, Nurse Lori A. Leonard took information from Melody for purposes of medical treatment. Melody told the nurse appellant had placed his private parts in her mouth, her private area, and in her bottom. Melody also explained what had happened to Dr. Annette Hamrick who conducted the rape examination. Dr. Hamrick discovered a one centimeter tear in Melody's vaginal area consistent with "something of considerable size or something forcibly put into the vagina." T. Vol. III, at 105. It was "not the kind of tear you have having normal sex. * * * [I]t is very consistent [with] something large being in that area and forced." Id. at 106. As part of the investigation, the Stark County Crime Lab received the rape kit, the clothing Melody was wearing on the day of the rape, the top of the mattress from the abandoned house, and samples of blood, hair, and pubic hair from appellant and Melody. Although there was no semen or sperm on the swabs from the rape kit, Jennifer Bloink, the crime lab serologist, testified such an absence did not preclude a finding a sexual assault occurred. In fact, Ms. Bloink testified taking a bath after such an assault would impact the results and wash away most of the evidence present in or on the body. Ms. Bloink also examined Melody's underwear and discovered blood on the exterior and interior of the crotch, and saliva on the interior of the crotch. Ms. Bloink discovered sixteen stains of human blood, twenty-four pubic hairs and fifteen human head hairs on the mattress. Twenty-four of the pubic hairs were consistent with appellant's sample pubic hairs. At the time of the incident, Melody had not yet developed pubic hairs. Ms. Bloink sent the samples to the FBI for further identification. The FBI Forensic Examiner, Thomas Gallaghan, supervised the examination of the evidence. Mr. Gallaghan found the presence of DNA from more than one person on the interior crotch of Melody's underwear. Although expressed in statistical terms, Gallaghan concluded blood samples from the mattress were consistent with appellant's DNA type and Melody's DNA type. On May 15, 1998, appellant was indicted by the Stark County Grand Jury with one count of rape with the force specification, in violation of R.C. 2907.02(A)(1)(b) and (2), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4). Appellant was appointed counsel and plead not guilty to the charges. The matter proceeded to a jury trial on November 16, 1998. The jury found appellant guilty of rape with a force specification and of gross sexual imposition. The trial court set the sexual predator hearing and the sentencing hearing for November 20, 1998. In a December 1, 1998 Judgment Entry, the trial court sentenced appellant to life imprisonment on the rape conviction, and five years on the gross sexual imposition conviction. The trial court ordered the sentences be served consecutively. It is from that judgment entry appellant prosecutes this appeal, assigning the following as error:
 I. THE APPELLANT WAS DENIED A RIGHT TO A FAIR TRIAL BASED UPON PROSECUTORIAL MISCONDUCT IN THE FORM OF IMPROPER COMMENTS MADE BY THE PROSECUTOR OR IN THE ALTERNATIVE THE APPELLANT WAS DENIED INEFFECTIVE [SIC] ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE OHIO AND UNITED STATES CONSTITUTION.
 II. THE TRIAL COURT ERRED IN RUNNING APPELLANT'S SENTENCE ON THE GROSS SEXUAL IMPOSITION CHARGE CONSECUTIVE TO THE SENTENCE ON THE RAPE CHARGE.
 III. THE TRIAL COURT ERRED IN FINDING THAT THE APPELLANT SHOULD BE CLASSIFIED AS A SEXUAL PREDATOR.
 IV. THE JURY VERDICT FINDING APPELLANT GUILTY OF RAPE AND GROSS SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 I
In his first assignment of error, appellant contends he was denied the right to a fair trial due to prosecutorial misconduct. Specifically, appellant contends the prosecutor made improper comments regarding his decision not to testify on his own behalf. In the alternative, appellant argues he was denied effective assistance of counsel because his own trial counsel failed to object to the prosecutor's prejudicial statements. We will address the arguments separately. A. Prosecutorial Misconduct Appellant first argues the prosecutor's statements in opening and closing arguments amounted to prosecutorial misconduct. Appellant made no objection to these statements at trial. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, cert. denied112 L.Ed.2d 596; State v. Smith (1984), 14 Ohio St.3d 13. Failure to timely object to a prosecutor's alleged improper remarks waives any challenge to such alleged misconduct. State v. Wade (1978),53 Ohio St.2d 182, 186, Vacated in part on other grounds (1978),438 U.S. 911. "Improper remarks of counsel during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to * * * otherwise error cannot be predicated upon the remarks alleged to have been improper." State v. De Nicola (1955),163 Ohio St. 140, para. 3 of the syllabus. Accordingly, we review this assignment of error under the plain error standard. Crim.R. 52(B) provides: (B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. Reversal is warranted only when the outcome of the trial would have been different but for the error. State v. Long, supra, para. 2 of the syllabus. Appellant contends the following statements amounted to prosecutorial misconduct by effecting substantial rights, and changing the outcome of the trial. The first statement was made in the prosecutor's opening argument: The issue — quite frankly, ladies and gentlemen, the issue in this case is one of credibility, is one of physical evidence. By entering a not guilty plea, this Defendant has denied these allegations. And as the sole triers of fact in this case, it is your responsibility to ultimately determine whether you believe this Defendant, who has denied these allegations, or Melody Lopez, who will testify in this case about what happened to her in that house, that abandoned home, as well as the physical evidence which I assert to you, ladies and gentlemen, will directly corroborate every bit of Melody's testimony.
T., Vol. I at 97.
The second source of this claimed error occurred in the closing argument, in which the prosecutor stated: I told you in opening statement that this case was about credibility. And it is.
T., Vol. IV at 315.
We do not find either of the prosecutor's statements improper. Accordingly, we find no plain error in the allowance of the statements in opening and closing arguments. B. Ineffective Assistance of Counsel In the second argument within the first assignment of error, appellant contends he was denied effective assistance of counsel when his trial counsel failed to object to the above-referenced statements. We disagree. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838; Strickland v. Washington (1984),466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart, supra. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91, 95. Because we find the statements were proper, appellant's argument fails under both prongs of Strickland, supra.
 II
In his second assignment of error, appellant maintains the trial court erred in imposing consecutive sentences on his convictions because gross sexual imposition and rape are allied offenses of similar import. We disagree. R.C. 2941.25 provides: Multiple Counts
(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Until recently, we used the two-part test announced in Newark v. Vazirani (1990), 48 Ohio St.3d 81, to analyze claims involving allied offenses of similar import. That test required an analysis of the relevant offenses in light of the specific facts of the case. However, in State v. Rance (1999), 85 Ohio St.3d 632, the Ohio Supreme Court clarified the test to be applied when reviewing claims involving allied offenses of similar import, specifically overruling Vazirani, supra: Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract. (Newark v. Vazirani [1990], 48 Ohio St.3d 81, 549 N.E.2d 520, overruled.)
Syllabus par. 1.
"If the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639, citing State v. Jones (1997), 78 Ohio St.3d 12, 14. Assuming arguendo, the crimes of rape and gross sexual imposition, when compared in the abstract, are allied offenses of similar import under the test announced in Rance, supra, in the matter sub judice, we find a separate animus for each crime. We find the gross sexual imposition occurred when appellant fondled Melody on the first floor of the abandoned house. The acts constituting rape occurred only after appellant ordered Melody upstairs, found a new location, removed his own clothing, and ordered Melody to remove her clothing. Only after all of these events occurred did appellant force oral and vaginal intercourse. The acts committed on the first floor of the abandoned house were separate in time and place from the act committed on the first floor. Appellant's act of fondling the child downstairs was in no way incidental to the subsequent rape which occurred upstairs. For these reasons we find the crimes in the matter sub judice were committed with a separate animus. Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant argues the trial court erred in finding him a sexual predator. We disagree. In State v. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court determined R.C. Chapter 2950 is remedial in nature and not punitive. Id. at 417. As such, we review this assignment of error under the standard of review contained in C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279. R.C. 2950.01(E) defines a "sexual predator" as "* * * a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.09(B)(2) sets forth the relevant factors a trial court is to consider in determining whether a person should be classified as a "sexual predator." This statute provides: In making a determination under division (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's age;
(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender;
(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
(I) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
(j) Any additional behavioral characteristics that contribute to the offender's conduct.
In Cook, the Ohio Supreme Court explained, "[a]t the hearing, the offender and the prosecutor have the opportunity to testify, present evidence, and call and examine witnesses and expert witnesses regarding the determination of whether the offender is a sexual predator." Cook, supra at 423. In making its determination the trial court stated: THE COURT: The factors that I have to consider in making a determination of sexual classification are the — among others, some of which are applicable and some of which are not, but it's under section B(2) under 2950.09. And one of those is the offender's prior criminal record including but not limited to all sexual offenses. And, of course, we have the exhibits admitted into evidence relative to the plea on the prior gross sexual imposition matter. And the file indicates there was also a burglary conviction that is present.
* * *
I am aware that this defendant was on parole at the time of the instant offense. He was actually released from prison on May 5th of 1997. So almost exactly four months after being released, he committed this rape and gross sexual imposition.
* * *
And another factor to consider under the statute is the age of the victim of the sexually oriented offense which a sentence is to be imposed. And, or course, Melody was nine and a half or thereabouts at the time of this offense. And the previous plea relative to the sex offense is another factor to consider.
And based upon those factors, as required by statute, I determine that Mr. Cassidy is a sexual predator rather than any of the lesser classifications.
T., Vol IV. at 12-13.
The trial court analyzed the facts in light of the above-enumerated statutory factors. We find the fact appellant, at the age of thirty-five, raped a nine year old child at knife point, combined with the fact appellant used his relationship with the child to perpetrate the offense more than sufficient, competent, credible evidence upon which a trial court could base its decision. However, the court had even more information. Not only had appellant been convicted of a previous gross sexual imposition involving a child under the age of thirteen, a crime for which he served time in prison, he committed the instant offense while on parole from a burglary charge. We find the trial court's classification of appellant as a sexual predator is not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error appellant maintains the jury verdict finding him guilty of rape and gross sexual imposition was against the manifest weight of the evidence. Specifically, appellant argues the physical evidence did not support the finding appellant forcibly raped Melody or that appellant had sexual intercourse with Melody. Therefore, appellant reasons the jury lost its way in finding appellant guilty of each offense. We disagree. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, n 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witness' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. We find the testimonial evidence and the direct physical evidence presented at trial sufficient and competent, credible evidence upon which a jury could find appellant guilty. At trial, Melody testified appellant put his hand on her shirt and subsequently touched her breasts. She further testified to the rape at knife point. In addition to the testimonial evidence, considerable physical evidence was also presented at trial. Dr. Hamrick, who examined Melody at the hospital, testified as to a tear in Melody's vaginal area consistent with something forcibly being put into the vagina. The Stark County Crime Lab analyzed the rape kit, Melody's clothing, the mattress top from the abandoned house, and samples of blood, hair, and pubic hair from appellant and Melody. The crime lab discovered blood and saliva on the exterior and interior of the crotch panel of Melody's underwear. The evidence was then sent to the FBI lab for a DNA analysis. This analysis found the presence of DNA from more than one person on the interior crotch of Melody's underwear. The FBI lab also matched blood stains on the mattress to both Melody's DNA type and appellant's DNA type. Although the physical evidence was inconclusive, it undoubtedly corroborated Melody's testimony. We find the jury based its decision on competent, credible evidence. Appellant's fourth assignment of error is overruled.
The December 1, 1998 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Edwards, J. concur