JOURNAL ENTRY AND OPINION
Jeffrey Kerr appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of aggravated assault of Tom D'Amico in connection with a fight which occurred at the Heaven and Earth bar in the Cleveland Flats. On appeal, he complains the court improperly admitted character evidence and several previously undisclosed photographs. He also challenges the court's exclusion of a defense witness's testimony and its remarks directed at defense counsel. In addition, he asserts that misconduct by the prosecutor deprived him of a fair trial. After a review of the record and applicable law, we discern no errors and therefore affirm the judgment of the court.
On February 28, 2001, Tom D'Amico and Anthony Allie went to Heaven and Earth, a bar in the Flats of Cleveland, for its Mardi Gras night. While seated at the bar, D'Amico recognized the barmaid, Hasha Jambor, with whom he had a past relationship, and he exchanged a few words with her. Later, Jambor came out from behind the bar and walked toward her boyfriend, Jeffrey Kerr, who was sitting at the other end of the bar. A fight between Kerr and D'Amico erupted; Kerr punched D'Amico in the face, and, according to D'Amico's testimony at trial, also kicked him in the head repeatedly with his boot. When Allie attempted to break up the fight, someone threw him across the floor. D'Amico suffered injuries to his eye, nose and his jaw, the repair of which required a plate to be screwed to his face.
As a result of this incident, the grand jury indicted Kerr for felonious assault of D'Amico and Allie.
At trial, D'Amico told the jury that he had six beers and two shots of alcohol before he went to Heaven and Earth; that he recognized Jambor, with whom he had had a brief sexual relationship; that he exchanged words with her when she came out from behind the bar; that Jambor came back to him agitated and asked him to leave after she spoke to Kerr; and that Kerr approached him and punched him in the face, knocking him to the floor, and repeatedly kicked him in the head with his boot.
Allie testified that he attempted to break up the fight but got punched by Kerr and thrown across the floor.
Laura Shelton, a patron at the bar, testified that she saw a tall man punch D'Amico and then repeatedly kick him.
At the close of the state's case, the court granted Kerr's Crim.R. 29 motion in part, reducing the felonious assault count regarding Allie to simple assault.
Jambor then testified for the defense, stating that as she passed D'Amico, he grabbed her by the arm and pulled her towards him. She further testified that Kerr walked towards them and exchanged words with D'Amico, who then grabbed her vagina, and Kerr pushed his arm away. When D'Amico tried to swing at Kerr, he hit her in the mouth instead, causing her to fall on the floor. She stated that she did not see Kerr hit D'Amico, because she was down on the floor covering her face with her hands.
When asked by defense counsel if Kerr is a possessive or jealous person, Jambor answered not at all. She denied ever having a sexual relationship with D'Amico or knowing where he lives. The state then presented three photographs of her in D'Amico's apartment, one of them showing her half naked in his waterbed and another showing her posing on his sofa.
David Spreitzer, a bouncer at the bar, testified he observed a scuffle and saw Jambor down on the floor.
James Mentzer, Kerr's roommate, testified that he saw D'Amico grab Jambor and touch a personal part of her body, and also saw D'Amico swing at Kerr but hit Jambor instead. He then testified that he, not Kerr, hit Allie. At that point, the court advised him of his constitutional rights and appointed counsel for him. After conferring with counsel, Mentzer invoked his Fifth Amendment rights. The court then instructed the jurors to disregard his entire testimony.
Kerr testified in his defense, stating that when Jambor came out from behind the bar, D'Amico grabbed her and placed his hand in her crotch, saying, I'm taking this one home tonight. He smacked D'Amico's hand down, and, after D'Amico pushed him, he pushed D'Amico back. When D'Amico swung at him grazing Jambor in the face, he punched D'Amico in the jaw. He stated he only struck D'Amico once, and that he did not kick him.
The state then presented three rebuttal witnesses. Fred Wells testified that he observed a past altercation where Kerr punched Wells' friend in the face, and that he once heard Kerr saying he did not like going down to the Flats because every time he got in a fight, he had to kick somebody's ass.
The next rebuttal witness, John Schweter, testified that he had previously worked as a bouncer with Kerr at a strip bar and he observed two incidents where Kerr antagonized people in the parking lot and hit them.
The third rebuttal witness, Detective Scott Zenkewicz, testified that the photographs depicting Jambor were taken in D'Amico's apartment.
In its charge to the jury, the court gave an instruction on the lesser offense of aggravated assault and the jury returned a verdict finding Kerr not guilty of felonious assault but guilty of aggravated assault of D'Amico. It also found him not guilty of the assault of Allie. The court sentenced Kerr to 15 months for the aggravated assault.
Kerr now appeals, raising five assignments of error for our review. The first states:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION BY ADMITTING STATE REBUTTAL WITNESS TESTIMONY REGARDING GENERAL CHARACTER AND SPECIFIC INSTANCES OF PAST CONDUCT OF APPELLANT AND, THEREFORE, A REVERSAL IS REQUIRED.
Kerr argues that the court abused its discretion in allowing the state to introduce character evidence prohibited by Evid.R. 404(A) through two rebuttal witnesses, Fred Wells and John Schweter, claiming that he never opened the door or presented any character evidence which would warrant the state's introduction of evidence regarding his character.
In reviewing a claim alleging improper admission of evidence, we apply the abuse of discretion standard. See State v. Combs (1991),62 Ohio St.3d 278. A trial court enjoys broad discretion when determining the admissibility of evidence. See State v. Barnes, 94 Ohio St.3d 21,2002-Ohio-68.
Evid.R. 404(A) provides:
 (A) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; * * *.
It is a well-established rule that until a defendant offers evidence of his good character or reputation, the state may not offer testimony to evidence his bad character; once an accused puts evidence of his good moral character or his non-violent character in issue, however, the prosecution may offer evidence to rebut it. See, e.g., State v. Williams (1988), 38 Ohio St.3d 346; State v. Smith (1992), 84 Ohio App.3d 647.
Here, the record refutes Kerr's claim that he did not open the door to the state's rebuttal witnesses who testified about his violent character. The record reveals that Jambor, testifying as a defense witness, stated that Kerr is not a possessive or jealous person, and that he is great and treats her good. Further, Kerr himself testified on direct that the Heaven and Earth incident was the first time he had done any damage to someone by punching them. (Tr. 655.)
Thus, our review of the record indicates that Kerr placed his peaceable character in issue and thus opened the door for the rebuttal witnesses, Schweter and Zenkewicz, who testified about his non-peaceable character. Thus, the court did not abuse its discretion in admitting the evidence. This claim of error is not well taken.
Kerr's second assignment of error states:
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION BY ADMITTING STATE IMPEACHMENT OF DEFENSE WITNESS BY EXTRINSIC PHOTOGRAPHS WHERE STATE HAD DUTY TO DISCLOSE THIS EVIDENCE TO DEFENSE COUNSEL, YET PURPOSELY AND WILFULLY FAILED TO SO.
Kerr complains that the court improperly failed to exclude photographs that the state had not disclosed to him but utilized at trial to impeach a key defense witness, Jambor.
The rule governing a prosecutor's duty to disclose evidence is enunciated in Brady v. Maryland (1963), 373 U.S. 83, which imposed upon a prosecutor a due process duty to disclose evidence favorable to the accused. Specifically, the court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment. Subsequently, in United States v. Bagley (1985), 473 U.S. 667, 676, in considering evidence relating to the state's deal with the government's witnesses, the court held that impeachment evidence also falls within the Brady rule and must be disclosed.
In addition, Crim.R. 16(B) requires the state to disclose the following:
 (c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial * * *. (Emphasis added.)
In the instant case, Kerr's reliance on Brady and Bagley is misplaced. Brady requires disclosure only of evidence that is, first, favorable to the accused and, second, material either to guilt or punishment; Bagley extends Brady to require disclosure of evidence which can be used to confront a witness adverse to the defendant. Here, the record indicates that the defense witness, Jambor, testified that she did not know where D'Amico lived, had never been to his residence, and did not have a sexual relationship with him. The state impeached her with photographs of her in his apartment which suggested a relationship between them. Thus, these photographs do not constitute Brady materials requiring disclosure, because they do not meet the first prong of the Brady test, namely, that the evidence is favorable to the accused.
Furthermore, Crim.R. 16 imposes a disclosure duty on the prosecutor only when the evidence is material to the preparation of defense or intended for use by the prosecution at trial.
Kerr claims these photographs were material to his defense because they relate to his guilt, in the sense that they show his motive to attack Mr. D'Amico. (App. Br. 21). This claim is belied by the record. Kerr himself testified that he punched D'Amico because D'Amico grabbed Jambor's crotch and also because he grazed her in the face and knocked her to the floor.
Finally, the record indicates that the state introduced these photographs to impeach her credibility only after Jambor made apparently false statements concerning her relationship with D'Amico. Pursuant to Crim.R. 16(B), therefore, the prosecutor had no duty to disclose them because the state could not have anticipated that Jambor would make untruthful statements.
Accordingly, this assignment of error is overruled.
Kerr's third assignment of error states:
 III. THE DEFENDANT WAS DENIED A FAIR TRIAL AND DEPRIVED OF HIS RIGHT TO COMPULSORY DUE PROCESS OF LAW WHEN THE TRIAL COURT INSTRUCTED THE JURY TO COMPLETELY DISREGARD THE TESTIMONY OF DEFENSE WITNESS JAMES MENTZER AFTER HE ASSERTED HIS FIFTH AMENDMENT RIGHTS.
Kerr complains that the court denied him a fair trial when it instructed the jury to disregard the entire testimony of his witness, James Mentzer, after Mentzer asserted his Fifth Amendment rights.
As the record reflects, Mentzer's testimony consisted of two parts. For the first part, he stated he saw D'Amico grab Jambor and reach to touch her personal area, and also saw D'Amico swing at Kerr and hit Jambor instead. For the second part, he testified that he, not Kerr, hit Allie.
Regarding Mentzer's admission that he, not Kerr, had struck Allie, the record reflects that the jury found Kerr not guilty of that offense. Thus, Kerr is not prejudiced in anyway by the court's exclusion of this portion of Mentzer's testimony.
Regarding Mentzer's testimony about his observations of D'Amico's touching Jambor, which, if admitted, would have bolstered Kerr's claim of striking D'Amico in defense of Jambor, the record reflects that both Kerr and Jambor gave a similar account of the events. Thus, Mentzer's testimony would have been cumulative, and therefore its exclusion constitutes harmless error. See State v. Fears, 86 Ohio St.3d 329,1999-Ohio-111.
Accordingly, the exclusion of Mentzer's testimony did not deprive Kerr of a fair trial. This assignment of error is overruled.
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR AND COMMITTED JUDICIAL MISCONDUCT BY STATEMENTS MADE TO DEFENSE COUNSEL IN THE PRESENCE OF THE JURY THROUGHOUT THE JURY TRIAL.
Kerr complains that several comments made by the court and directed to defense counsel prejudiced him.
In reviewing a claim of prejudicial remarks by the trial judge, the court in State v. Wade (1978), 53 Ohio St.2d 182, set forth the following guideline:
 The appellant was herein endowed with the constitutional rights to a fair trial and representation by counsel. Certain improper remarks by the trial judge, however, might have prejudiced these rights. Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel. Id. at 188, citing Annotation, 62 A.L.R.2d 166 (1958).
Here, Kerr challenges six instances of allegedly improper remarks directed at defense counsel. Our review of these instances shows they all involve what Kerr perceives as the court's chastising his counsel. The following exchange, which occurred during cross-examination of the state's witness, Allie, by defense counsel, Paul Daiker, is illustrative:
 Q: Now, you testified, [prosecutor] Mr. Fitzerald asked you * * *, did Mr. D'Amico do anything to deserve what happened to him; correct?
A: Correct.
 Q: You said `No, he's not a violent person'; isn't that correct?
A: Yes.
 Q: Do you know Mr. D'Amico has a conviction for aggravated assault —
MR. FITZGERALD: Objection.
 THE COURT: Sustained, sustained, sustained. Please, you know better than that.
Go ahead. (Tr. 158-159.)
The record shows that Kerr's counsel did not object to this comment by the court, or five other similar remarks he now challenges. In Wade, the defendant likewise failed to object at trial to the judicial statements complained of on appeal, and the court determined that the appellant failed to preserve the alleged errors for review, stating:
 * * * The failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, for, absent an objection, the trial judge is denied an opportunity to give corrective instructions as to the error.
Thus, as in Wade, Kerr failed to preserve the error concerning improper judicial statements for our review. Even if he had, we conclude he failed to meet the burden of demonstrating that the judge's comments prejudiced his right to a fair trial or impaired the effectiveness of his counsel. Wade, supra.
Kerr's fifth assignment of error states:
 V. THE DEFENDANT WAS DENIED A FAIR TRIAL AND DEPRIVED OF DUE PROCESS OF LAW BY THE MISCONDUCT OF THE PROSECUTOR DURING CROSS-EXAMINATION OF KEY DEFENSE WITNESS.
Kerr complains that misconduct by the prosecutor deprived him of a fair trial when, during cross-examination of a defense witness, Jambor, he warned her about the charges of perjury and obstruction of justice and suggested she was lying.
We recognize that ordinarily, reminders of perjury by a prosecutor are improper, as such statements function as backhanded impeachment as well as attempted witness intimidation and express the prosecutor's personal belief or opinion as to the credibility of the witness. State v. Halley (1994), 93 Ohio App.3d 71, 79, citing State v. Thayer (1931),124 Ohio St. 1; State v. Smith (1984), 14 Ohio St.3d 13. Due to the prosecutor's role as representative of the state, it is important to avoid any such impropriety so that the stature of the office of the prosecuting attorney does not lend credence or distrust to the testimony of either party's witnesses. Even if the prosecutor is aware of a witness's falsity, unless the prosecutor chooses to testify, it is improper to imply the witness is a perjurer. Halley, 93 Ohio App.3d at 79.
We also recognize, however, that a prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987),33 Ohio St.3d 19. Further, in Smith v. Phillips (1982), 455 U.S. 209, the court stated that [t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Finally, the effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. State v. Maurer (1984), 15 Ohio St.3d 239.
Here, Kerr challenges the following colloquy, which occurred after Jambor denied having had a relationship with D'Amico and before the state showed her the photographs of her in D'Amico's apartment:
 Q. And have you ever heard of a crime called obstruction of justice? Have you ever heard of that?
A. Um, I'm not sure exactly —
MR. DAIKER: Objection.
THE COURT: Overruled.
A. I'm not sure of the exact definition.
 Q. Well, if you give false information to a police detective and it affects their negatively affects their investigation, that's a crime.
 Are you aware * * * that you're supposed to give truthful information to the detective?
A. Yes.
* * *
Q. * * * do you know what perjury is?
A. Um, I'm sure I don't know the exact word.
A. Well, perjury, it's kind —
MR. DAIKER: Objection.
Q. Remember when we talked about —
THE COURT: Overruled.
 Q. obstruction a while ago? Remember when we talked about obstruction of justice a while ago?
A. Yes.
 Q. Well, perjury is when you promise and look all these people in the eye in the jury, in court, and you lie in a court case when you're under oath. Do you understand that concept?
A. Correct.
 Q. But you're sure that you haven't there haven't been any lies that you've told to assist Mr. Kerr in your testimony; is that what you're is that what your testimony is?
A. Yes. (Tr. 617-621.)
Our review of the transcript here does not indicate that the witness was intimidated by the prosecutor's statements regarding perjury, as she stood by her testimony.
More importantly, although the prosecutor improperly implied Jabor's untruthfulness, the state properly impeached her through the introduction of the photographs. The prosecutor moreover drew attention to the inconsistencies in her testimony during closing argument. Both efforts by the prosecutor enabled the jury to perform its function in determining Jambor's credibility. Accordingly, we conclude the alleged prosecutorial misconduct, considered in light of the whole trial, did not deprive Kerr of a fair trial. This assignment of error is overruled.
On the basis of the foregoing, we affirm the judgment of the court.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and COLLEEN CONWAY COONEY, J., CONCUR.